[No. S054240. July 31, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS LEDESMA, Defendant and Appellant.

**COUNSEL**

William M. Robinson, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Christopher W. Grove, Stan M. Helfman and Peggy S. Ruffra, Deputy Attorneys General, for Plaintiff and Respondent.

Paul J. Pfingst, District Attorney (San Diego), Thomas F. McArdle and Edward J. Mantyla, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**BROWN, J.**—Is imposition of a sentencing enhancement for personal use of a firearm discretionary or mandatory when the underlying offense is assault

with a firearm? (Pen. Code, § 245, subd. (a)(2).)[1] If discretionary, as the Court of Appeal held in *People* v. *Campbell* (1995) 40 Cal.App.4th 1666 [48 Cal.Rptr.2d 340], the trial court must state its reason for imposing any additional term. (§ 1170, subd. (c).) If mandatory, as the Court of Appeal held in *People* v. *Hill* (1989) 207 Cal.App.3d 1574 [255 Cal.Rptr. 772], imposition of the midterm is not a sentencing choice and requires no statement of reasons. (§ 1170.1, subd. (d).) Based on the language of section 12022.5, subdivision (d) (section 12022.5(d)), as well as other evidence of legislative intent, we conclude the trial court has no discretion. We therefore affirm the judgment of the Court of Appeal.

PROCEDURAL BACKGROUND

Defendant was convicted of various offenses including assault with a firearm. (§ 245, subd. (a)(2).) The jury also found he personally used a firearm in the commission of the assault. (See § 12022.5, subd. (a)(1).) Based on this finding, the trial court imposed an additional, consecutive midterm sentence for the enhancement.

Defendant appealed contending imposition of a personal use enhancement is discretionary when the underlying felony is assault with a firearm. (§ 12022.5(d); see *People* v. *Campbell, supra,* 40 Cal.App.4th at p. 1669; *People* v. *Vacca* (1995) 38 Cal.App.4th 804, 807-808 [45 Cal.Rptr.2d 483]; see also *People* v. *Moore* (1986) 178 Cal.App.3d 898, 903 [224 Cal.Rptr. 204].) Therefore, defendant argued, the trial court's failure to state reasons for imposing an additional term was erroneous and requires remand. (§ 1170, subd. (c); *People* v. *Belmontes* (1983) 34 Cal.3d 335, 348-349 [193 Cal.Rptr. 882, 667 P.2d 686].)

Following the rationale of *People* v. *Hill, supra,* 207 Cal.App.3d 1574, 1578-1579, the Court of Appeal rejected this argument and concluded a statement was unnecessary because imposition of the enhancement for assault with a firearm is mandatory. (Cal. Rules of Court, rule 428(a); see *People* v. *Johnson* (1996) 51 Cal.App.4th 1329, 1332 [59 Cal.Rptr.2d 798]; *People* v. *Martinez* (1987) 194 Cal.App.3d 15, 21-22 [239 Cal.Rptr. 272].) We granted review to determine the proper construction of section 12022.5(d) and resolve the conflict in the Courts of Appeal.

DISCUSSION

■ At the time of defendant's offense, section 12022.5, subdivision (a), provided that a sentencing enhancement "shall" be imposed for "any person

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

who personally uses a firearm in the commission or attempted commission of a felony" "unless use of a firearm is an element of the offense . . . ."[2] Pursuant to subdivision (d), "[t]he additional term . . . may be imposed in cases of assault with a firearm under paragraph (2) of subdivision (a) of Section 245, or assault with a deadly weapon which is a firearm under Section 245."[3]

Defendant takes the position that "may" is permissive, relying principally on *People* v. *Campbell*, *supra*, 40 Cal.App.4th 1666. In *Campbell*, the Court of Appeal found "the plain language of section 12022.5, subdivision (d) unambiguous and presume[d] the Legislature meant what it said when it used the word 'may' to grant an exception to the long-established proscription in section 12022.5, subdivision (a) . . . ." (40 Cal.App.4th at p. 1673; *People* v. *Vacca*, *supra*, 38 Cal.App.4th at pp. 807-808.) Accordingly, the court construed subdivision (d) as "granting the trial court discretion to determine whether or not to impose the punishment for a personal firearm use enhancement when [firearm use] is an element of a section 245 defined assault . . . ." (*People* v. *Campbell*, *supra*, 40 Cal.App.4th at p. 1672.) Defendant also analogizes to section 667.6, subdivisions (c) and (d). Courts have interpreted "may" in subdivision (c) as conferring discretionary authority to impose full, separate, and consecutive terms, whereas "shall" in subdivision (d) makes such sentencing mandatory. (*People* v. *Craft* (1986) 41 Cal.3d 554, 558-559 [224 Cal.Rptr. 626, 715 P.2d 585]; *People* v. *Smith* (1984) 155 Cal.App.3d 539, 543 [202 Cal.Rptr. 259]; cf. *People* v. *Reiley* (1987) 192 Cal.App.3d 1487, 1490 [238 Cal.Rptr. 297] [construing "shall" in section 1170.1, subdivision (d), as mandatory and "may" in subdivision (e) as permissive].)

Contending section 12022.5(d) is mandatory, the Attorney General argues "may" does not always denote discretion and relies on *People* v. *Hill*, *supra*, 207 Cal.App.3d 1574. In *Hill*, the Court of Appeal concluded "that the permissive language, i.e., the word 'may' of section [12022.5(d)], is an exception to the prohibitive language of subdivision (a), i.e., 'unless use of a firearm is an element of the offense . . . .' " (207 Cal.App.3d at p. 1579.) "May" was not intended to create a new class of crimes in which the court would have discretion to impose the enhancement, but to confer authorization to do so when otherwise precluded. (See *People* v. *Johnson*, *supra*, 51

---

[2]This provision is now set forth in section 12022.5, subdivision (a)(1). (Stats. 1995, ch. 377, § 9.) Unless otherwise noted, all further references to section 12022.5, subdivision (a), are to the version at the time of defendant's offense.

[3]As discussed, *post*, at page 100, section 12022.5(d) now includes drive-by murders. (Stats. 1993, ch. 611, § 31.5.) At the time of defendant's crime, the penalty range was three, four, or five years in prison. The aggravated term has since been increased to 10 years. (Stats. 1994 (First Ex. Sess. 1993-1994) ch. 33, § 6.)

Cal.App.4th at pp. 1332-1333.) Assault with a firearm thus comes within the mandatory terms of section 12022.5, subdivision (a).

■ Well-established principles guide our resolution of this conflict. "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].)

■ Although the "shall"/"may" dichotomy cited by defendant is a familiar interpretive device, it is not a fixed rule of statutory construction. (See 1A Sutherland, Statutory Construction (5th ed. 1993) pp. 763-769 ["shall" can be construed as either mandatory or directory as well as denote future operation]; Evans, Statutory Interpretation (1989) pp. 237-239 ["may" can be permissive or empowering].) Moreover, unlike some codes that expressly define "shall" as mandatory and "may" as permissive (see, e.g., Bus. & Prof. Code, § 19; Lab. Code, § 15; Prob. Code, § 12), the Penal Code provides only that "[w]ords and phrases must be construed according to the context and the approved usage of the language . . . ." (§ 7, subd. 16.)

"May" is a common grammatical term encompassing multiple meanings, including an expression of "ability" or "power" as well as "permission." (Webster's New World Dict. (3d college ed. 1988) p. 837.) Moreover, judicial authorities have construed "may" as both discretionary and mandatory. (See, e.g., *In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495] ["The ordinary import of 'may' is a grant of discretion."]; *Harless* v. *Carter* (1954) 42 Cal.2d 352, 356 [267 P.2d 4] [" 'Where persons or the public have an interest in having an act done by a public body "*may*" in a statute means "*must.*" (Citation.)' "]; *Hollman* v. *Warren* (1948) 32 Cal.2d 351, 356 [196 P.2d 562] ["may" construed as mandatory in Government Code section 8200]; see also Black's Law Dict. (6th ed. 1990) p. 979, col. 2; Webster's New World Dict., *supra*, at p. 837 ["may" in law means "shall; must"].) ■ Given this definitional diversity, it is impossible to conclude with sufficient certainty what the Legislature intended by its use of "may" if we consider the word in isolation. We must therefore focus more broadly on the language, context, and history of the statute.

In tracing the evolution of section 12022.5(d), we begin before the beginning. Section 12022.5 derives from an early version of section 12022, which provided a sentencing enhancement for a defendant armed with a deadly weapon or concealable firearm during the commission or attempted commission of a felony. By judicial construction, section 12022 applied only when "the use of a gun [or other deadly weapon] was not one of the essential factors" of the underlying offense (*In re Shull* (1944) 23 Cal.2d 745, 750 [146 P.2d 417] [assault with a deadly weapon]) or "an essential element of the crime" (*People* v. *Floyd* (1969) 71 Cal.2d 879, 883 [80 Cal.Rptr. 22, 457 P.2d 862][first degree robbery, which required the defendant be armed with a deadly weapon]).

In 1969, the Legislature enacted the first version of section 12022.5, which provided in relevant part: "Any person who uses a firearm in the commission or attempted commission of a robbery, assault with a deadly weapon, murder, rape, burglary, or kidnapping, upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of not less than five years. . . . [¶] . . . [¶] This section shall apply even in those cases where the use of a weapon is an element of the offense." (Stats. 1969, ch. 954, § 1, pp. 1900-1901.) By the latter provision, the Legislature "left no doubt" the additional term was mandated even when the enhancement overlapped an essential element of the underlying crime already more severely punished because it involved the use of a firearm. (*People* v. *Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024]; *People* v. *Hunt* (1977) 19 Cal.3d 888, 891, fn. 2 [140 Cal.Rptr. 651, 568 P.2d 376]; see also *People* v. *Read* (1983) 142 Cal.App.3d 900, 904 [191 Cal.Rptr. 305].)

When the Legislature enacted the Uniform Determinate Sentencing Act of 1976, it expanded application of section 12022.5 to all felonies, but required personal use. The final version of the amended statute read in its entirety: "Any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of two years, unless use of a firearm is an element of the offense of which he was convicted. [¶] The additional term provided by this section may be imposed in cases of assault with a deadly weapon under Section 245." (Stats. 1977, ch. 165, § 92, p. 678.) Under former section 1170.1, subdivision (g) (now § 1170.1, subd. (h)), the trial court retained discretion to strike a use enhancement when circumstances in mitigation warranted. (Stats. 1977, ch. 165, § 17, p. 650.)

The operative language at the time of defendant's crime was enacted in 1982 as part of Assembly Bill No. 3314, 1981-1982 Regular Session, which amended the final sentence of section 12022.5 to provide: "The additional term provided by this section may be imposed in cases of assault with a firearm under paragraph (2) of subdivision (a) of Section 245, or assault with a deadly weapon which is a firearm under Section 245." (Stats. 1982, ch. 1404, § 2.1, p. 5359.) The revision paralleled changes in section 245 creating additional categories of felonious assault, including separate crimes of assault with a firearm and assault on a peace officer with a firearm. (§ 245, subds. (a)(2), (c), as amended by Stats. 1982, ch. 142, § 1.2, p. 469; *People* v. *Hill*, *supra*, 207 Cal.App.3d at pp. 1578-1579.) After a series of unrelated amendments, this provision eventually became section 12022.5(d). (Stats. 1988, ch. 1249, § 3, p. 4162.)

When viewed from a historical perspective, it becomes clear subdivision (d) of section 12022.5 was written in relation to subdivision (a), rather than contradistinction. Unlike section 667.6, section 12022.5 was not originally subdivided with separately designated provisions addressing different aspects of a broader sentencing scheme. Instead, both subdivisions (a) and (d) of section 12022.5 were initially part of a unitary statute the Legislature intended to be read as a whole, not as individual words in isolation. So considered, "shall" and "may" are logically as well as syntactically linked by the intervening "unless" proviso, which determines their functional interrelationship. Under subdivision (a), the trial court must impose an additional term for personal use of a firearm except when such use is an element of the underlying felony. If, however, the underlying felony is assault with a firearm, subdivision (d) removes that prohibition. Accordingly, subdivision (d) creates an exception to the proviso in subdivision (a) and renders imposition of a use enhancement mandatory for the enumerated offenses.

Defendant argues section 12022.5 is "replete with mandatory language" (see subds. (c), (e), & (f)), so the Legislature must have consciously chosen not to use it in subdivision (d). (*People* v. *Campbell*, *supra*, 40 Cal.App.4th at p. 1673.) This argument ignores the migratory history of subdivision (d), the original terms of which directly followed the "unless use of a firearm is an element of the offense" qualification of subdivision (a). Moreover, since subdivisions (c), (e), and (f) were added incrementally (see Stats. 1982, ch. 142, § 5, p. 478 [subdivision (e)]; Stats. 1988, ch. 1249, § 3, pp. 4161-4162 [subdivisions (c) & (f)]), we discern no particular legislative design in this multiple use of "shall."

We are persuaded the Legislature intended section 12022.5(d) to be mandatory for several reasons. Legislative history materials[4] for Assembly Bill No. 476, where subdivision (d) originated, include a bill analysis prepared for the Assembly Committee on Criminal Justice stating section 12022.5 will now apply in cases of assault with a deadly weapon. (Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 476 (1977-1978 Reg. Sess.).) According to an analysis prepared for the Senate Judiciary Committee, "The bill specifically states that the enhancement may be used in ADW cases. [¶] As amended, AB 476 would make imposition of this enhancement mandatory." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 476 (1977-1978 Reg. Sess.) p. 7.) Another bill analysis indicates the amendment "[a]llows [the use enhancement] to be used in assault with a deadly weapon cases (S.B. 42 [the original version of the Uniform Determinate Sentencing Act] is ambiguous on this point)." (Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 476 (1977-1978 Reg. Sess.).) A digest report, prepared in conjunction with the Assembly third reading, notes the added requirement of "personal" use and also reflects by handwritten interlineation the bill "extends the enhancement to ADW cases." (Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 476 (1977-1978 Reg. Sess.).) Taken together, these documents not only strongly suggest an understanding and expectation assault with a deadly weapon was subject to a mandatory additional term, they offer little, if any, evidence of a contrary intent. Finally, the purpose of Assembly Bill No. 476 was "to quiet some of the complaints about SB 42 by providing longer terms in prison for certain criminal defendants." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 476 (1977-1978 Reg. Sess.) pp. 1-2.) Making imposition of a use enhancement discretionary would not promote this goal.

Defendant challenges this interpretation because "at the time of the 1977 amendments, no portion of section 245 required, as an element of its commission, use of a *firearm* specifically, as opposed to a deadly weapon generally . . . ." As the Attorney General observes, however, no judicial authority had so held when Assembly Bill No. 476 was enacted. The legislative history also reflects some understandable uncertainty on the point, since this court had held section 12022 did not apply to assault with a deadly weapon. (*In re Shull, supra,* 23 Cal.2d at p. 749; see also *People* v. *Ford* (1964) 60 Cal.2d 772, 794 [36 Cal.Rptr. 620, 388 P.2d 892].) As we noted in *People* v. *Harvey* (1979) 25 Cal.3d 754, 761 [159 Cal.Rptr. 696, 602 P.2d 396], determining the applicability of enhancements often presents "close and subtle" questions. (See *People* v. *Read, supra,* 142 Cal.App.3d at p. 907 (conc. and dis. opn. of Zenovich, J.).) The Legislature may simply

---

[4]We grant defendant's request to take judicial notice of legislative history materials concerning section 12022.5(d) and related provisions. (Evid. Code, § 452, subd. (c).)

have acted in an abundance of caution given the courts' sometimes narrow views of sentencing enhancements. (*People* v. *Strickland* (1974) 11 Cal.3d 946, 959-961 [114 Cal.Rptr. 632, 523 P.2d 672]; *People* v. *Floyd, supra*, 71 Cal.2d at p. 883; *In re Shull, supra*, 23 Cal.2d at p. 749; *People* v. *Provencher* (1973) 33 Cal.App.3d 546, 548-550 [108 Cal.Rptr. 792] [holding use enhancement inapplicable to assault with intent to commit murder under original version of section 12022.5, which included only murder and assault with deadly weapon].) Indeed, the Legislature apparently remains wary: The current version of section 12022.5(d) continues to include "assault with a deadly weapon which is a firearm" (Stats. 1982, ch. 1404, § 2.1, p. 5359) even though firearm use is not an element of assault with a deadly weapon (see *People* v. *Read, supra*, 142 Cal.App.3d at p. 905; *People* v. *Whitehouse* (1980) 112 Cal.App.3d 479, 485 [169 Cal.Rptr. 199]), and such offenses would come within the purview of section 12022.5, subdivision (a).

We also find support in the legislative history of Assembly Bill No. 3314, 1981-1982 Regular Session, which added assault with a firearm to section 12022.5(d). As discussed at length in *People* v. *Martinez, supra*, 194 Cal.App.3d at pages 20-23, "committee reports, partisan caucus analyses, and [the] Legislative Counsel's digest" establish "section 12022.5 was amended because legislators belatedly realized that their creation of separate crimes of assault 'with a firearm' (§ 245, subds. (a)(2), (c)) might interfere with the existing practice of allowing firearm-use enhancements to be imposed for any section 245 violation in which the defendant *personally* used a firearm. The 1982 amendments to section 12022.5 were an attempt by the Legislature to preserve the status quo ante by providing that the use enhancement charge 'applies to a deadly weapon which is a firearm.' (Legis. Counsel's Dig., Assem. Bill No. 3314, Stats. 1982, ch. 1404 (Reg. Sess.).)" (194 Cal.App.3d at p. 23.) Several of the documents quoted specifically noted that " '[e]xisting law provides for the imposition of specified additional punishment for the use of a firearm in felony cases, including assault with a deadly weapon.' " (*Id.* at p. 21; see *id.* at p. 22; *People* v. *Hill, supra*, 207 Cal.App.3d at pp. 1578-1579.) These comments reflect a legislative understanding that, as with other included felonies, the use enhancement was mandatory for assault with a deadly weapon.

Furthermore, to find section 12022.5(d) discretionary would make it unique among sentencing enhancements. While in many instances the trial court has authority to strike or stay imposition of an additional term (see § 1170.1, subd. (h); *People* v. *Dobson* (1988) 205 Cal.App.3d 496, 501 [252 Cal.Rptr. 423]), defendant cites no circumstance in which it may essentially disregard—and without a statement of reasons—an enhancement allegation properly charged and found true. (Cf. Cal. Rules of Court, rule 406.)

Statutory authority as well as the Rules of Court reflects a legislative assumption the scope of the court's discretion consists only of the power to strike or stay, not the fundamental authority to impose or not impose in the first instance. (See, e.g., § 1170.1, subd. (d); Cal. Rules of Court, rules 406, 428, 447.) We find no evidence it intended section 12022.5(d) to depart from these general parameters.

The sentencing scheme for section 245, as amended, buttresses our conclusion. Even before the enactment of section 12022.5, which originally included assault with a deadly weapon, crimes committed with firearms were perceived as more serious than other offenses. (See *People* v. *Thomas* (1992) 4 Cal.4th 206, 212-213 [14 Cal.Rptr.2d 174, 841 P.2d 159].) The base term for assault with a firearm does not reflect this consideration, however. After bifurcation, the penalty remained the same as for assault with a deadly weapon. (Stats. 1982, ch. 136, § 1, p. 437.) Only mandatory imposition of the firearm use enhancement could ensure a sentence proportionately more severe. The Legislature made precisely this adjustment with respect to misdemeanor assault, which does not come within section 12022.5(d). Misdemeanor assault with a deadly weapon is subject to a jail term "not exceeding one year" (§ 245, subd. (a)(1)), whereas when the weapon is a firearm, the term is "not less than six months and not exceeding one year." (*Id.*, subd. (a)(2); Stats. 1982, ch. 136, § 1, p. 437.)

Further bolstering our conclusion, the Legislature in 1993 added to section 12022.5(d) murder "perpetrated by means of shooting a firearm from a motor vehicle." (Stats. 1993, ch. 611, § 31.5.) This revision was part of Senate Bill No. 310, a package of amendments increasing penalties for drive-by killings. (See Historical Note, 47 West's Ann. Pen. Code (1997 pocket supp.) § 189, p. 139.) In his signature message, Governor Wilson noted, "this bill imposes a sentence enhancement of up to five years for the use of the firearm." (*Ibid.*) As with the inclusion of assault with a firearm, granting discretionary sentencing authority under section 12022.5(d) would be inconsistent with the obvious seriousness of these violent crimes and the legislative intent to punish them accordingly.

Notably, this amendment to section 12022.5(d) was enacted after the courts in *People* v. *Hill, supra,* 207 Cal.App.3d 1574, and *People* v. *Martinez, supra,* 194 Cal.App.3d 15, interpreted the provision as mandatory. Although the Legislature had the opportunity, it made no alterations to reflect a different intent. ■ "When a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of

that statute. [Citation.]" (*People* v. *Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076]; cf. *People* v. *Escobar* (1992) 3 Cal.4th 740, 750-751 [12 Cal.Rptr.2d 586, 837 P.2d 1100] [legislative silence inconclusive because statute was amended in unrelated respects].)

 Finally, our holding comports with the frequent observation that "[t]he obvious purpose of section 12022.5 is to deter the use of firearms in the commission of violent crimes by prescribing additional punishment for each use." (*People* v. *White* (1976) 16 Cal.3d 791, 795 [129 Cal.Rptr. 769, 549 P.2d 537]; *People* v. *Fierro* (1991) 1 Cal.4th 173, 225-226 [3 Cal.Rptr.2d 426, 821 P.2d 1302].) In 1989, the Legislature recognized the increasing urgency of this purpose by deleting reference to section 12022.5 from section 1170.1, subdivision (h), which grants trial courts discretion to strike a wide variety of sentencing enhancements. In *People* v. *Thomas*, *supra*, 4 Cal.4th 206, we construed this amendment to eliminate all statutory authority to strike, including section 1385, in part because it was included in a bill "that contained a variety of measures *expanding or enhancing* criminal liability for unlawful firearm use or possession." (4 Cal.4th at p. 212.) Preserving any procedure to circumvent imposition of a use enhancement would undermine manifest legislative intent to the contrary. (*Id.* at p. 213.) In light of its history, similar reasoning applies to section 12022.5(d). As the Court of Appeal below explained, "there is no difference in exercising discretion to strike [a personal use enhancement] and exercising discretion not to impose it." What the Legislature has taken with one hand, we cannot find it intended to give back with the other.[5]

Alternatively, defendant argues we should find section 12022.5(d) discretionary under the principle that " ' "[w]hen language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted." ' [Citations.]" (*In re Christian S.* (1994) 7 Cal.4th 768, 780 [30 Cal.Rptr.2d 33, 872 P.2d 574].) For the reasons discussed above, we are unpersuaded defendant's interpretation is reasonable within the meaning of this rule. In particular, we find section 12022.5(d) is not ambiguous when considered in historical perspective. Moreover, construing the statute as conferring discretionary authority would create an anomaly among sentence enhancements and allow trial courts to nullify express findings without appropriate accountability. (Cf. § 1385 [order dismissing enhancement must be "in furtherance of justice" with reasons "entered upon the minutes"]; Cal. Rules of Court, rule 406(b) [statement of reasons required for "striking or staying the

---

[5]*People* v. *Campbell*, *supra*, 40 Cal.App.4th 1666; *People* v. *Vacca*, *supra*, 38 Cal.App.4th 804; and *People* v. *Moore*, *supra*, 178 Cal.App.3d 898, are disapproved to the extent they are inconsistent with the views expressed herein.

punishment for an enhancement"].) It would also be fatally at odds with the Legislature's categorical withdrawal of discretion to strike personal firearm use enhancements. (*People* v. *Thomas, supra,* 4 Cal.4th at pp. 212-213.)

DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**MOSK, J.**—I dissent.

Courts must construe statutory language according to its ordinary meaning (*Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1225 [23 Cal.Rptr.2d 397, 859 P.2d 96]) whenever possible. The majority, relying on what they term "definitional diversity" (maj. opn., *ante,* at p. 95), have yielded to the temptation to interpret a statute contrary to the plain meaning of its words. In my view, "may," as used in Penal Code section 12022.5 (hereafter section 12022.5), subdivision (d), means that trial courts are *permitted, but not required,* to impose a firearm use enhancement when the defendant stands convicted of an assault with personal use of a firearm (Pen. Code, § 245). The majority construe it to mean the court must impose the enhancement. I cannot agree.

The relevant statutory provisions are subdivisions (a)(1) and (d) of section 12022.5. Subdivision (a)(1) provides: "Except as provided in subdivisions (b) and (c), any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of that felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for 3, 4, or 10 years, *unless* use of a firearm is an element of the offense of which he or she was convicted." (Italics added.) The provision was not materially different on March 9, 1993, when defendant committed his crime.

Section 12022.5, subdivision (d) creates an exception to subdivision (a)'s exception. It provides in pertinent part: "The additional term provided by this section *may* be imposed in cases of assault with a firearm under paragraph (2) of subdivision (a) of Section 245, or assault with a deadly weapon which is a firearm under Section 245 . . . ." (Italics added.) This language was identical at the time of defendant's crime.

"In providing this exception the Legislature used the permissive word 'may' rather than a mandatory word such as 'shall.'" (*People* v. *Beagle*

(1972) 6 Cal.3d 441, 452 [99 Cal.Rptr. 313, 492 P.2d 1] [speaking of a different statutory provision].) We should, as did *Beagle*, "conclude that the choice of the language leaves the trial court with discretion . . . ." (*Ibid.*) As Chief Justice Wright understood in deciding *Beagle*, in ordinary usage *may* refers to the permissive and *shall* to the mandatory. Although the majority acknowledge this difference, they seize on evidently rare instances in which courts have found that *may* refers to the mandatory. Hence the majority's "definitional diversity" and their conclusion that "it is impossible to conclude with sufficient certainty what the Legislature intended by its use of 'may' if we consider the word in isolation." (Maj. opn., *ante*, at p. 95.)

But *may* is ordinarily understood to refer to permission. (Webster's Third New Internat. Dict. (1981) p. 1396 ["have permission to"]; Webster's New Internat. Dict. (2d ed. 1959) p. 1517 ["[l]iberty; opportunity; permission"]; see also Black's Law Dict. (6th ed. 1990) p. 979, col. 2.)

To be sure, this definition is not exclusive. *May* sometimes refers to the mandatory when "used esp. in deeds, contracts, and statutes" (Webster's Third New Internat. Dict., *supra*, at p. 1396). But such a definition is unusual—it is not common parlance. Moreover, it is technical and is not to be followed if we can construe a statute in accordance with its words' standard meanings (see *People* v. *Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999]), for "courts ordinarily give the words of a statute the usual, everyday meaning they have in lay speech" (*Arnett* v. *Dal Cielo* (1996) 14 Cal.4th 4, 19 [56 Cal.Rptr.2d 706, 923 P.2d 1]).

Our codes routinely distinguish between *shall* and *may*. (Bus. & Prof. Code, § 19 [" 'Shall' is mandatory and 'may' is permissive."]; Corp. Code, § 15 [same]; Ed. Code, § 75 [same]; Elec. Code, § 354 [same]; Evid. Code, § 11 [same]; Fam. Code, § 12 [same, in pertinent part]; Fin. Code, § 15 [same]; Fish & G. Code, § 79 [same]; Food & Agr. Code, § 47 [to same effect]; Gov. Code, § 14 [same]; Harb. & Nav. Code, § 16 [same]; Lab. Code, § 15 [same]; Mil. & Vet. Code, § 14 [same]; Prob. Code, § 12 [same]; Pub. Resources Code, § 15 [same]; Pub. Util. Code, § 14 [same]; Rev. & Tax. Code, § 16 [same]; Sts. & Hy. Code, § 16 [same]; Unemp. Ins. Code, § 15 [same]; Veh. Code, § 15 [same]; Wat. Code, § 15 [same]; Welf. & Inst. Code, § 15 [same]; cf. Ins. Code, § 16 [to same effect "unless otherwise apparent from the context"].) The Legislature is well aware of the standard meanings of these words.

The majority state that the Penal Code contains no similar definitional statute. Are they suggesting that the Legislature meant that different definitions of *shall* and *may* should apply to the Penal Code? If so, I disagree.

The ordinary meanings of these words are also reflected in case law. I have already cited *People* v. *Beagle, supra,* 6 Cal.3d 441. Other decisions support *Beagle's* reasoning. "The ordinary import of 'may' is a grant of discretion." (*In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495].) "The word 'shall' is ordinarily 'used in laws, regulations, or directives to express what is mandatory.' (Webster's New Internat. Dict., Unabridged (3d ed. 1966) p. 2085, col. 3; [citations].) 'May,' on the other hand, is usually permissive. The Legislature is very aware of the distinction . . . ." (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 133 [142 Cal.Rptr. 325].)

Section 12022.5 uses *shall* 11 times. To recite a few instances, "any person who personally uses a firearm in the commission or attempted commission of a felony *shall* . . . be punished by an additional term of imprisonment . . . ." (Subd. (a)(1), italics added.) If the person is convicted of carjacking, "the additional term *shall* be 4, 5, or 10 years." (Subd. (a)(2), italics added.) A person committing or attempting to commit a felony by shooting at an occupied vehicle, and causing great bodily injury or death, "*shall* . . . be punished by an additional term of . . . 5, 6, or 10 years." (Subd. (b)(1), italics added.)

By contrast, *may* appears in section 12022.5 but once: subdivision (d) provides that "[t]he additional term provided by this section *may* be imposed in cases of assault with a firearm . . . ." (Italics added.) A compelling inference thus arises that in section 12022.5 the Legislature intended two different meanings for *shall* and *may*, and they are the meanings commonly associated with the two words. "When the Legislature has, as here, used both 'shall' and 'may' in close proximity in a particular context, we may fairly infer the Legislature intended mandatory and discretionary meanings, respectively." (*In re Richard E., supra,* 21 Cal.3d at pp. 353-354.)

The meaning of *may* in section 12022.5, subdivision (d), is clear: A trial court is permitted to impose the enhancement term, but is not required to do so. I would reverse the Court of Appeal's judgment.

Appellant's petition for a rehearing was denied October 1, 1997. Mosk, J., was of the opinion that petition should be granted.