[No. B164486. Second Dist., Div. Two. Nov. 19, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDERICK BERNARD CHEAVES, Defendant and Appellant.

**COUNSEL**

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and Victoria B. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DOI TODD, J.**—A jury convicted appellant Frederick Bernard Cheaves of two counts of maliciously and falsely reporting the planting of a bomb in violation of Penal Code[1] section 148.1, subdivision (c), and the trial court sentenced him to four years and eight months in state prison.

---

[1] All further references to statutes are to the Penal Code unless stated otherwise.

Appellant appeals on the grounds that: (1) his conviction violates federal due process in that the persons to whom appellant made false bomb threats are not persons who fall within the parameters of section 148.1, subdivision (c); and (2) the trial court committed prejudicial error by failing to instruct on the lesser included offense of calling the 911 emergency line with the intent to annoy or harass.

## FACTS

### A. *Prosecution Evidence*

On July 29, 2002, at approximately 5:40 p.m., Susan Lepre, who was working as a 911 operator, received a call from a man stating he had placed a bomb in the Los Angeles Times building earlier in the day. She generated an incident report that was transmitted to police officers electronically.

On the same day and at about the same time, Patrick Butler was working as a security guard in the Los Angeles Times building, stationed in a booth at the entrance to the building's underground parking garage. He noticed appellant walking down the street, and later saw appellant walking by again in the opposite direction. He then saw appellant enter the parking garage. Butler confronted appellant, who placed a bag he was carrying in front of his body. Appellant held the bag between himself and Butler, and said repeatedly, "I'm the one, I'm the one." Butler followed as appellant backed into the parking structure, and appellant said, "[y]ou don't want to die, do you?" Eventually, appellant moved onto the loading dock where other security officers who had responded to Butler's call for backup blocked the entrance into the building. Appellant sat down on the floor and told the security guards that he had just armed a bomb, and they had better stay back. In the meantime, officers from the Los Angeles Police Department arrived, an alarm was sounded, and the building was evacuated. Police diverted traffic from the area. During the course of the standoff, more than 100 police officers were involved in the operation. No bomb was found in the building, and appellant's bag contained only pencils and paper.

Appellant was ultimately taken into custody and transported to the police station. He waived his rights and told the police that he had written a screenplay concerning prison and parole life, and he believed that the movie industry conglomerates had stolen his work and were using it without his

authorization. He had wanted to speak to writers at the Los Angeles Times, and became very angry and frustrated when he was unable to see anyone at the newspaper. He decided to call 911 and make a bomb threat against the Los Angeles Times.

### B. *Defense Evidence*

Appellant testified that he told Butler he was the one who had called in the bomb threat and that he was remorseful for it. The security officers were very aggressive toward him, and he repeatedly told them that if he moved his foot he would explode a bomb in his bag.

During trial appellant continued to maintain that his screenplay had been stolen. He claimed he had registered it at the Writer's Guild, but there was no record of it. He called everywhere he could think of for help. He testified that he told a police officer he did not know why he had called in the bomb threat. But immediately after calling in the bomb threat he realized what he had done was wrong and went to the Los Angeles Times building to resolve the situation. On cross-examination, appellant admitted that during the 911 call he had said, "6:00 p.m. L.A. Times kill our Black kids, beat our Black kids for the last time."

## DISCUSSION

### A. *Section 148.1, Subdivision (c)*

Appellant contends that his convictions under section 148.1, subdivision (c) violated due process because no violation of subdivision (c), as opposed to subdivisions (a) or (b), was established by the evidence. Specifically, appellant contends that since Lepre, the 911 operator, and Butler, the security guard, are within the class of persons specified under subdivisions (a) and (b), they cannot also be in the category of "any other person" set forth in subdivision (c). Appellant contends that he was therefore charged and convicted under the wrong statute, and his convictions under subdivision (c) for making false bomb reports to Lepre and Butler must be reversed. We disagree.

Section 148.1 provides in pertinent part:

"(a) Any person who reports to any peace officer listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, employee of a fire department or fire service, district attorney, newspaper, radio station, television station, deputy district attorney, employees of the Department of Justice, employees of an airline, employees of an airport, employees of a railroad or busline, an

employee of a telephone company, occupants of a building or a news reporter in the employ of a newspaper or radio or television station, that a bomb or other explosive has been or will be placed or secreted in any public or private place, knowing that the report is false, is guilty of a crime punishable by imprisonment in the state prison, or imprisonment in the county jail not to exceed one year.

"(b) Any person who reports to any other peace officer defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 that a bomb or other explosive has been or will be placed or secreted in any public or private place, knowing that the report is false, is guilty of a crime punishable by imprisonment in the state prison or in the county jail not to exceed one year if (1) the false information is given while the peace officer is engaged in the performance of his or her duties as a peace officer and (2) the person providing the false information knows or should have known that the person receiving the information is a peace officer.

"(c) Any person who maliciously informs any other person that a bomb or other explosive has been or will be placed or secreted in any public or private place, knowing that the information is false, is guilty of a crime punishable by imprisonment in the state prison, or imprisonment in the county jail not to exceed one year."

In construing a statute, our task is to ascertain the Legislature's intent so as to effectuate the purpose of the law. (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) We begin by examining the words of the statute, giving them a plain and commonsense meaning. (*Ibid.*) We construe statutory words and clauses in the context of the statute as a whole. (*Ibid.*) If the plain language of the statute is unambiguous and does not involve an absurdity, then the plain meaning governs. (*People v. Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].)

According to the plain language of subdivision (c) of section 148.1, a person who maliciously communicates false information about placement of a bomb to any other person commits a crime. Subdivision (c) was clearly intended as a catchall provision to be used when the person informed of the bomb threat is not specifically identified in subdivisions (a) or (b), with the additional requirement that the perpetrator must have *maliciously* passed on the false information. But subdivision (c) does not expressly exclude persons who might be deemed included in subdivisions (a) and (b). It would be an absurdity to require the reversal of a conviction under section 148.1, subdivision (c) because, in hindsight, the person informed about the bomb might have fit into one of the categories in the other subdivisions.

In addition, given the dubious status of the persons receiving the bomb threat information in this case, the prosecution was not required to charge appellant under subdivisions (a) or (b). "It is well settled that the prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring. [Citations.] This prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially available arises from ' "the complex considerations necessary for the effective and efficient administration of law enforcement." ' [Citations.]" (*People v. Birks* (1998) 19 Cal.4th 108, 134 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) "Generally, prosecutors may elect to proceed under either of two statutes that proscribe the same conduct." (*People v. Cockburn* (2003) 109 Cal.App.4th 1151, 1157 [135 Cal.Rptr.2d 807] (*Cockburn*), citing *Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1250 [265 Cal.Rptr. 144, 783 P.2d 731].) We believe the same principles apply to two different subdivisions of the same statute.

In *Cockburn* the defendant was charged and convicted under the general child abuse statute, section 273a, and he argued that the evidence supported his being charged under section 273d, a more specific statute prohibiting willful injury to a child. (*Cockburn, supra*, 109 Cal.App.4th at pp. 1156–1157.) Although appellant (unlike *Cockburn*) does not base his argument on the rule that a defendant must be prosecuted under the specific statute when his or her conduct violates both a general and specific statute, the principles set out in *Cockburn* are applicable. The *Cockburn* court stated that the general/specific statute rule did not apply because the general statute did not provide for more severe punishment. In addition, the specific statute had as one of the elements that the child must have suffered a "traumatic condition," and prosecutors might be unsure of their ability to prove that element. The court stated it was unlikely that the Legislature intended to force prosecutors with problems of proof of this element to choose to prosecute under the more specific statute and risk acquittal and a double jeopardy bar to further prosecution. (*Id.* at pp. 1160–1161.) The court refused to believe that the "nonsensical gamesmanship" revealed by the defendant's argument was intended by the Legislature. (*Id.* at p. 1161.)

Similarly, in the instant case, the prosecution could not be certain it could prove that Lepre, the 911 operator, was a peace officer. 911 operators are not listed as peace officers in section 830.1, 830.2 or 830.33. There is no reference to 911 operators or emergency service operators in Chapter 4.5, commencing with section 830. Even appellant goes no further than to say that the purposes behind the statute "strongly suggest" that 911 operators be classified as peace officers.

With respect to Butler, appellant asserts that Butler fits within section 148.1, subdivision (a) because newspapers are listed in that subdivision.

Appellant reasons that the Los Angeles Times, as a corporation, can only act through its employees, and Butler was an employee of the newspaper. Appellant argues that by informing Butler of the bomb, he was, in fact, informing the newspaper. Alternatively, appellant argues that Butler was an occupant of a building as described in subdivision (a). Although the prosecution may have been able to prove the various elements of this subdivision with regard to Butler, it was not required to take this route when the statute also specified a more general category of bomb threat recipients that presented fewer possible pitfalls for the prosecution's case.

Finally, appellant was not prejudiced by being charged under subdivision (c). Appellant does not assert he would have been able to refute the evidence if he had been charged under subdivisions (a) or (b). Moreover, by charging appellant under subdivision (c) the prosecution had the additional burden of proving that the false information was communicated maliciously.

As the United States Supreme Court stated in United States v. Batchelder (1979) 442 U.S. 114 [60 L.Ed.2d 755, 99 S.Ct. 2198], it "has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." (*Id.* at pp. 123–124.) The decision to prosecute and the determination of what charge to file or bring before a grand jury rest in the prosecutor's discretion. (*Id.* at p. 124.) The *Batchelder* court reversed the lower court's remand for resentencing where overlapping provisions of two statutes authorized different maximum penalties and the defendant was convicted of the offense carrying the greater penalty. (*Id.* at pp. 115–116.) Unlike the statutes under consideration in *Batchelder*, the different subdivisions of section 148.1 carry the same penalty.

We conclude that appellant suffered no due process violation by being charged and convicted of violating section 148.1, subdivision (c).

B.  *The Trial Court Did Not Err in Failing to Instruct on the Lesser Included Offense.*

Appellant contends that in the count involving Susan Lupre, the trial court's failure to instruct sua sponte pursuant to section 653x[2] on the lesser included offense of telephoning the 911 emergency line with the intent to annoy or harass mandates reversal. We disagree.

---

[2] Section 653x provides in pertinent part:

"(a) Any person who telephones the 911 emergency line with the intent to annoy or harass another person is guilty of a misdemeanor punishable by a fine of not more than one thousand dollars ($1,000), by imprisonment in a county jail for not more than six months, or by both the fine and imprisonment. Nothing in this section shall apply to telephone calls made in good faith.

■ In order to determine whether a lesser offense necessarily is included in the charged offense, either the "elements" test or the "accusatory pleading" test must be met. (*People v. Lopez* (1998) 19 Cal.4th 282, 288 [79 Cal.Rptr.2d 195, 965 P.2d 713].) The "elements" test is satisfied when the elements of ·the lesser offense are included in the elements of the greater offense. In other words, if one crime cannot be committed without necessarily committing a lesser crime, the latter necessarily is included in the former. (*Ibid.*) The "accusatory pleading" test is satisfied if the charging allegations describe the offense in such a way that, if committed as alleged, the lesser offense necessarily must have been committed. (*Id.* at pp. 288–289.) The evidence adduced at trial is not to be considered in determining whether one offense necessarily is included within another. (*People v. Ortega* (1998) 19 Cal.4th 686, 698 [80 Cal.Rptr.2d 489, 968 P.2d 48].)

The California Supreme Court has stated that "[t]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 162 [77 Cal.Rptr.2d 870, 960 P.2d 1094].)

■ We conclude that a violation of section 148.1, subdivision (c), the greater offense, can be committed without committing the lesser offense described in section 653x. Section 653x requires an intent to annoy, which may be shown by repeated calls to a 911 operator that are unreasonable under· the circumstances. To commit a violation of section 148.1, however, the perpetrator need not telephone a 911 emergency service operator, and need not even use a telephone to convey the bomb threat.

■ The accusatory pleading test dictates the same conclusion. Appellant was charged with maliciously informing a person, Lepre, that a bomb was placed in the Los Angeles Times building, knowing that the report was false. The accusatory pleading contained no indication that Lepre was a 911 operator whom appellant had informed by telephone, as required by section 653x. As noted, evidence revealed at trial does not enter into the determination of whether a lesser offense is included in a greater offense. (*People v. Ortega, supra,* 19 Cal.4th 686, 698.)

---

"(b) An intent to annoy or harass is established by proof of repeated calls over a period of time, however short, that are unreasonable under the circumstances."

Accordingly, under either the elements or accusatory pleading test, we conclude that the trial court was under no duty to give an instruction on section 653x. But any error in failing to instruct on section 653x would have been harmless in any event. ■ Error in instructions on a lesser included offense in a noncapital case is subject to the *Watson* standard of review, and reversal is required only if it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the instructional error. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 165; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Here, there was no evidence that the offense committed was anything less than that described in section 148.1, subdivision (c), and there was ample evidence that appellant's call to Lepre was made maliciously. (CALJIC No. 1.22.)

## DISPOSITION

The judgment is affirmed.

Boren, P. J., and Nott, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 2004.