Filed 11/15/23  P. v. Henderson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GERMAN DWAYNE HENDERSON,<br><br>Defendant and Appellant. | F084750<br><br>(Super. Ct. No. F21900035)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Gregory T. Fain, Judge.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kimberley A. Donohue and Annabella Yousif, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Franson, J. and Meehan, J.

Defendant German Dwayne Henderson raises only one issue in this appeal following his convictions for first degree murder and assault with a firearm. Specifically, defendant contends the trial court's decision to impose two use of a firearm enhancements as part of his sentence results in a violation of Penal Code[1] section 1385, subdivision (c)(2) because the sentence exceeded 20 years. We disagree and affirm the sentence imposed.

## PROCEDURAL SUMMARY

On February 23, 2021, an information was filed charging defendant with murder (§ 187, subd. (a), a felony; count 1), attempted murder (§§ 664/187, subd. (a), a felony; count 2), and assault with a firearm (§ 245, subd. (a)(2), a felony; count 3). Along with these charges, the information contained allegations supporting various enhancements attached to each count involving the use of a firearm (§ 12022.53, subd. (d)) and the infliction of great bodily injury (§ 12022.7, subd. (a)).

Following a jury trial, defendant was found guilty of first degree murder (count 1) and committing an assault with the use of a firearm (count 3) on April 4, 2022. The jury also found true the allegations that defendant intentionally discharged a firearm within the meaning of section 12022.53, subdivision (c)[2] as to count 1, and personally used a firearm within the meaning of section 12022.5, subdivision (a) as to count 3.[3]

---

[1]    All further statutory references are to the Penal Code.

[2]    Although the information only identified subdivision (d) of section 12022.53 as a possible enhancement to count 1, the verdict form presented to the jury and signed by the jury foreman listed both subdivisions (c) and (d) as available enhancements. The jury found the allegation that defendant violated section 12022.53, subdivision (d) "not true," but found "true" the allegation defendant used a firearm as defined in section 12022.53, subdivision (c). No challenge to that verdict form has been raised in this appeal.

[3]    Section 12022.5, subdivision (a) is a mandatory enhancement under subdivision (d) of section 12022.5, as discussed in *People v. Ledesma* (1997) 16 Cal.4th 90, 97–101.

Defendant was sentenced on June 28, 2022, to a total aggregate term of 50 years to life.  On count 1, for first degree murder, defendant received a sentence of 25 years to life.  This sentence was enhanced by a consecutive term of 20 years for the use of a firearm.  For the count 3 conviction of committing an assault with a firearm, defendant received a consecutive determinate term of two years, which was enhanced because of the personal use of a firearm with a consecutive term of three years.

## FACTUAL SUMMARY[4]

Defendant was convicted of murdering Kenneth Butler, Jr., and for committing an assault with a firearm on Jaquata Chauhan, during the early morning hours of August 6, 2020.  Chauhan testified she knew defendant from "the street" and that each of them, including Butler, was involved in the sale of illegal drugs.  She knew defendant as "Dump" and referred to him with this name during her testimony.  Chauhan testified that while she and Butler were involved in a relationship at the time of the crime, they did not engage in the sale of drugs together, conducting their individual deals during the day and then coming together at night.

Several hours before the incident, Chauhan testified she arrived at a tent near a homeless shelter when she saw Butler and defendant engaged in a discussion.  Chauhan recalled hearing defendant tell Butler that if he did not "bring something to the table" there was going to be a shootout.  Chauhan interpreted defendant's threat as requiring Butler to pay a "tax" or money if he engaged in drug transactions in a certain area.  At some point during this discussion, Chauhan recalled seeing a gun in defendant's pants.  Chauhan soon left to go to a liquor store, then met up later with Butler at a nearby motel where they were staying.

---

[4]     Because the only issue on appeal involves the court's application of section 1385 to the issue of enhancements, an abbreviated summary of the facts is provided here.

3

Sometime after midnight, Butler received a phone call from someone wanting to buy drugs. Chauhan went with Butler, who drove her car to the location. Sometime after arriving at the location, Butler got out of the car and started walking around, then, according to Chauhan, he started to act strangely. When Butler returned to the car, he started to move the car slowly at first, then pushed Chauhan out of the car as shooting erupted. Chauhan believes Butler pushed her out of the car to save her life. Around this time, Chauhan realized she was shot in the elbow. Chauhan described how the shooting continued with defendant eventually standing over her to shoot into the car through the passenger side, hitting Butler in the neck with his final shot.

A police detective who arrived at the scene stated the passenger side of Chauhan's vehicle was riddled with gunfire. The coroner who examined Butler's body determined the gunshot to the neck was the cause of death. He also noted 10 bullets struck Butler's body.

After the prosecution rested its case, the defense chose not to present any evidence.

## DISCUSSION

Again, the only issue raised by defendant in this appeal is whether the trial court committed error under section 1385 by imposing two sentence enhancements.

I.   **Applicable Law**

"For all criminal sentencings after January 1, 2022, our Legislature in Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) [Senate Bill 81] has provided direction on how trial courts are to exercise their discretion in deciding whether to dismiss sentencing enhancements." (*People v. Walker* (2022) 86 Cal.App.5th 386, 391, review granted Mar. 22, 2023, S278309 (*Walker*).) Section 1385, subdivision (c)(1) now provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so," and subdivision (c)(2) states that "[i]n exercising its discretion under this

4

subdivision, the court shall consider and afford great weight to evidence" of nine listed "mitigating circumstances," any one of which "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." Subdivision (c)(3) further provides: "While the court may exercise its discretion at sentencing, this subdivision does not prevent a court from exercising its discretion before, during, or after trial or entry of plea."

The nine listed "mitigating circumstances" include factors such as mental illness, prior victimization, childhood trauma, use of an inoperable or unloaded firearm, the defendant's status as a juvenile, and the use of a prior conviction that is over five years old. (§ 1385, subd. (c)(2)(A)–(I).) They also include two mitigating factors of relevance to this appeal:

> "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." (§ 1385, subd. (c)(2).)

Defendant specifically argues section 1385 mandates dismissal of every enhancement that "could result in a sentence of over 20 years," because subdivision (c)(2)(C) states that such an enhancement "shall be dismissed." Other California courts have consistently rejected this mandatory dismissal argument in construing the "shall be dismissed" language of subdivisions (c)(2)(B) and (c)(2)(C). This argument has been considered and rejected by many of our sister courts. (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17–21 [rejecting argument that language in § 1385, subd. (c)(2)(C) providing enhancement "shall be dismissed" makes dismissal mandatory whenever a sentence over 20 years may result]; *People v. Anderson* (2023) 88 Cal.App.5th 233, 239 [language in § 1385 that trial court "shall" dismiss an enhancement is conditioned on finding dismissal is in the interest of justice]; *People v.*

*Mendoza* (2023) 88 Cal.App.5th 287, 294–297 [court not required to dismiss enhancement under § 1385, subd. (c)(2)(C) if it would endanger public safety]; see also *Walker*, *supra*, 86 Cal.App.5th at pp. 396–398 [purpose of § 1385 read as a whole is to give court discretion to dismiss enhancements].) These cases all hold that dismissal is not always required when a mitigating factor that contains "shall be dismissed" language applies. And more relevantly, they all hold that consideration of the mitigating factors in section 1385, subdivision (c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety. We find that no case has held dismissal is required even if it would endanger public safety.

We find the reasoning of these four cases to be persuasive. The statutory words "shall be dismissed" cannot be read in isolation. Construed as a whole, the statute makes clear that the listed mitigating circumstances merely guide the court's discretion in determining whether a dismissal is in furtherance of justice. Section 1385, subdivision (c)(1) first sets forth the governing "furtherance of justice" standard for dismissal, then subdivision (c)(2) states that the court must consider the listed mitigating circumstances "[i]n exercising its discretion" whether to dismiss. Section 1385, subdivision (c)(2) further states that dismissal is not required if the court finds that it would "endanger public safety." Section 1385, subdivision (c)(3) confirms the discretionary nature of this decision by stating that the court "may exercise its discretion at sentencing" but is not prevented "from exercising its discretion" earlier in the proceedings. Consistent with the holdings of our sister courts, we therefore conclude that the "shall be dismissed" language of section 1385, subdivision (c)(2)(C)—read in the context of the statute as a whole—applies only after a court has exercised its discretion in determining that a dismissal is "in the furtherance of justice" and would not "endanger public safety." (§ 1385, subds. (c)(1)–(2).) In short, the fact that defendant's total

6

sentence was over 20 years, or that his sentence included more than one enhancement, did not, alone, compel the dismissal of any enhancement.

Furthermore, the interpretation defendant promotes on the length of his sentence would mean that a 20-year firearm enhancement could never be imposed on a 25-year-to-life first degree murder conviction because the base sentence already exceeds 20 years. This interpretation would effectively nullify section 12022.53, subdivision (d), and such implied repeals "are strongly disfavored." (*People v. Superior Court (Ortiz)* (2022) 81 Cal.App.5th 851, 883.)

## II. The Trial Court's Application of Section 1385, Subdivision (c) Mitigating Factors

The question of how the section 1385 mitigating factors should be applied was actually raised by the prosecution before the trial court addressed sentencing, not by the defendant. For this reason, the People argue defendant forfeited the ability to challenge the imposition of the enhancements because no challenge was raised when they were imposed. We choose to address the proper interpretation of the language of section 1385, and not consider it forfeited by defendant.[5] There is a great deal of uncertainty surrounding this issue, represented by the fact the issue is now before our Supreme Court in *Walker*, *supra*, 86 Cal.App.5th 386.

When announcing its decision on the sentence to be imposed, the trial court stated:

---

[5] While we have chosen to address the broader issue of whether the trial court abused its discretion by applying an invalid interpretation of section 1385, we believe defendant has waived the ability to raise arguments that require this court to make factual determinations that were not presented to the court at the time of sentencing. We specifically point to an argument made by defendant that the length of the sentence is especially problematic because of defendant's age and when he might be eligible for parole if the enhancements are allowed to stand. Such an argument should have been made to the court.

"I would note there are a couple of statutes that have changed in the law, and, again, to anybody who is—cares to review this, I have … section 1385 and all the amendments in front of me. I have … [s]ection 1170 in front of me, and I've carefully reviewed both of these sections.

"In regard to the enhancements under [section] 1385, I realized with the recent amendment caused by Senate Bill 81 to … section 1385 that I do have discretion to strike firearms enhancements and other enhancements in the interests of justice, furtherance of justice if I were to find that. I'm also mindful that there are a whole host of factors that are listed in the exercise of that discretion and that I shall give—I shall consider and afford great weight to the evidence offered.

"In regard to these factors, I know [the prosecutor] is accurate in the factors are the [subdivision (c)(2)] factors, (A) through (I). I have considered each and every one of those factors. I'm not going to discuss them at the time. Most of them are inapplicable. The (C) factor, [subdivision (c)(2)(C)][6] factor is applicable because it does result in a sentence over 20 years. Well, because the crime is first degree murder, it is already over 20 years."

After addressing other statutory changes, the court returned its attention to the question of "public safety" as discussed in section 1385:

"I've really analyzed and have to give consideration to these facts and all the factors in deciding whether it's in the interests of justice to dismiss the firearms enhancement, and whether or not if I did, if I should strike the enhancement in furtherance of justice. Then if I did, would it present a danger to public safety?

"In my view, if I dismiss either of the firearm enhancements, it would endanger public safety because of the very, very serious nature of the offenses, how the firearms were used, the number of shots fired, the grave harm that was caused. And although I have not mentioned each of those other factors listed in the statute, I have considered them. And so the [c]ourt is not—although it has discretion to strike the enhancements or

---

**6** While the trial court actually cited subdivision (c)(3) of section 1385 when making these comments, we are confident the court actually meant subdivision (c)(2), as that subdivision provides the mitigating factors, which are not listed in subdivision (c)(3).

strike the punishment under amended [section] 1385, I am not doing so for the reasons set forth on the record."

We find no reversible error in how the court sentenced defendant. Again, Senate Bill 81 amended section 1385 to provide the presence of one or more of nine enumerated "mitigating circumstances" "weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety*." (§ 1385, subd. (c)(2), italics added.) The court was fully aware of the recent changes made to section 1385 by the Legislature and the potential impact those changes could have to a calculation of defendant's sentence. Furthermore, as stated in the final paragraph quoted above, the court made a specific finding about the danger to public safety here. The court cited the very serious nature of the offenses, how the firearm was used by defendant, the number of shots fired by defendant, and the grave harm that was caused, as reasons for concluding the dismissal of the enhancements would endanger public safety.

Finally, defendant cites *Walker*, *supra*, 86 Cal.App.5th 386 for the proposition the trial court failed to apply a rebuttable presumption in favor of dismissal, resulting in an abuse of discretion. We believe, however, that any presumption that might have existed was rebutted when the court stated it gave great weight to the mitigating factors, and that the dismissal of any enhancement would not further justice and would instead endanger public safety. As a result, any future action concluding section 1385 creates a rebuttable presumption would not affect our analysis here. (See *Walker*, at pp. 391, 398.)

## DISPOSITION

The judgment is affirmed.

9