Filed 8/20/20  P. v. Bayless CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072472 |
| v. | (Super.Ct.No. FSB1201452) |
| SHAWNA MARIE BAYLESS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Charles C. Ragland, James H.

1

Flaherty III, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

In 2013, defendant and appellant, Shawna Marie Bayless, pursuant to a plea agreement, pleaded guilty to voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] and two counts of first degree residential robbery (§ 211) after several amendments to the information. In 2019, defendant filed a petition for resentencing pursuant to then newly enacted section 1170.95, which the trial court denied. Defendant appealed.

On appeal, defendant argues that her petition was improperly denied because section 1170.95 applies to defendants who pleaded guilty to voluntary manslaughter in order to avoid a felony murder conviction. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

On the evening of April 2, 2012, defendant and her codefendant Gary Gallion met her other codefendant, Laurie Cone. Laurie Cone was separated from her husband, the victim, and was looking for someone to kill him in exchange for some of the victim's valuables. Cone gave Gallion a detailed layout of the victim's home and provided directions for entering the home. After this meeting, defendant dropped Gallion off " 'at home' " near the victim's residence. Gallion went to the victim's home and was unable

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The facts of the underlying offense are taken from the report of the probation officer. These facts have been abbreviated because they are not in dispute and are not at issue in this appeal.

to open a locked gate. Gallion then called defendant. Defendant, in turn, called Cone, who told defendant how to open the locked gate. Defendant passed this information on to Gallion. Shortly after, Cone called the police to report that she found the victim dead. Police discovered the victim with his ankles and arms bound and severe blunt force trauma to his head.

On April 25, 2012, the San Bernardino County District Attorney charged defendant via information with first degree murder (§ 187, subd. (a)), first degree residential robbery (§ 211) and first degree residential burglary (§ 459). A subsequent amended information alleged defendant aided and abetted the murder within the meaning of section 190.2, subdivision (a)(17)(A) and (G) because she was acting as an accomplice in the alleged robbery and residential burglary when the victim was killed. The information also included identical charges against the two codefendants, with Cone receiving an additional three counts of solicitation of murder.

On February 7, 2013, pursuant to the plea agreement, the People added the charges of voluntary manslaughter (§ 192, subd. (a)) and conspiracy to commit murder (§ 182, subd. (a)(1)) to the information. Defendant thereafter pleaded guilty to voluntary manslaughter (§ 192, subd. (a)), first degree residential robbery (§ 211), and conspiracy to commit murder (§ 182, subd. (a)(1)). The factual basis for this plea was the preliminary hearing transcript, which is not in the record. The plea agreement permitted defendant to withdraw her plea to conspiracy to commit murder if she testified truthfully at trial. Though the record is unclear, it appears she was allowed to withdraw her plea to

3

conspiracy to commit murder at some point before sentencing.  However, on May 1, 2013, at the sentencing hearing, the People orally added an additional charge of first degree residential robbery (§ 211), to which defendant also pleaded guilty.  Defendant was sentenced to a total term of 13 years eight months in prison for one count of voluntary manslaughter and two counts of first degree residential robbery.

On January 24, 2019, defendant petitioned the trial court for resentencing pursuant to then newly enacted section 1170.95.  The trial court denied defendant's petition on March 29, 2019.

Defendant timely appealed.

### III.  DISCUSSION

Defendant argues that the trial court improperly denied defendant's petition for resentencing because section 1170.95, which offers relief to those convicted of murder under the old felony-murder rule, should be read to also offer relief to defendants who pleaded guilty to voluntary manslaughter in order to avoid a conviction for felony murder.  In particular, defendant argues that the text and legislative history of section 1170.95 indicates that the Legislature intended to offer relief to those who pleaded guilty to voluntary manslaughter.  In the alternative, defendant argues that the statute is ambiguous, and that reading it in the way defendant suggests resolves this ambiguity and avoids violating the equal protection afforded by the United States Constitution.  We disagree with each of defendant's arguments.

4

## A.      Requests for Judicial Notice

As a preliminary matter, both parties have requested that this court take judicial notice of certain documents.  Defendant requests that we take judicial notice of the opening brief filed with this court in an appeal involving her codefendants.  The People request that we take judicial notice of certain legislative history documents regarding the debate, analysis, and passage of Senate Bill No. 1437 (Senate Bill 1437).

We deny defendant's request.  A court may take judicial notice of the "[r]ecords of . . . any court of this state," and may certainly take notice of its own records.  (Evid. Code, § 452, subd. (d).)  However, defendant only offers her codefendants' opening brief to provide some background about the factual basis for her plea.  The arguments and factual background provided in briefing is not evidence.  Even if they were, or if we augmented the record as defendant requests we do in the alternative, the factual basis for defendant's conviction is not relevant to deciding the issues before this court.  It is uncontested that defendant did not actually perpetrate any killing and that defendant was charged with murder under a felony murder or natural and probable consequences theory.  Any further factual background is not necessary to resolve whether she may petition for resentencing under section 1170.95.  Finally, even if some factual background was necessary to place defendant's petition in context, the record already contains sufficient factual information for those purposes in the form of the report of the probation officer.

The People's request for judicial notice is granted.  A court may take judicial notice of legislative history documents such as committee analyses, reports, and the

5

historical texts of bills and statutes. (*People v. Snyder* (2000) 22 Cal.4th 304, 309, fn. 5; *People v. Ledesma* (1997) 16 Cal.4th 90, 98, fn. 4; *People v. Eubanks* (1996) 14 Cal.4th 580, 591, fn. 3.) However, as discussed below, the legislative history of section 1170.95 is of limited utility given that we find it unnecessary to look further than the plain meaning of the statute.

      *B.      Section 1170.95 Does Not Provide Defendant with Relief*

Senate Bill 1437 "which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending Penal Code sections 188 and 189, as well as by adding Penal Code section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722.)

Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder or attempted murder, could be convicted of not only the target crime but also of the resulting murder or attempted murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 161; *In re R.G.* (2019) 35 Cal.App.5th 141, 144 (*R.G.*).) "This was true irrespective of whether the defendant harbored malice aforethought. Liability was imposed ' "for the criminal harms [the defendant] . . . naturally, probably, and foreseeably put in motion." [Citations.]' [Citation.]" (*R.G.*, at p. 144.)

Senate Bill 1437 "redefined 'malice' in section 188. Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer 'be imputed to a person based solely on [his or her] participation in a crime.' (§ 188, subd. (a)(3).)" (*R.G.*, *supra*, 35 Cal.App.5th at p. 144.) "Senate Bill 1437 also amended section 189, which defines first and second degree murder, by, among other things, adding subdivision (e). Under that subdivision, a participant in enumerated crimes is liable under the felony-murder doctrine only if he or she was the actual killer; or, with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life." (*People v. Munoz* (2019) 39 Cal.App.5th 738, 749.)

Senate Bill 1437 also added section 1170.95, which states that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).) An offender may file a section 1170.95 petition if he or she was prosecuted under a felony murder or natural and probable consequences theory, but under amended sections 188 or 189, could not have been convicted of first or second degree murder. (§ 1170.95, subd. (a).) If the petitioner makes a prima facie showing that he or she is eligible for and entitled to relief, the trial court must conduct a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d)(1).)

"This appeal requires us to determine whether section 1170.95 permits persons who were convicted of voluntary manslaughter to have their convictions vacated and to be resentenced." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992 (*Flores*).) "Statutory interpretation is 'an issue of law, which we review de novo.' " (*Union of Medical Marijuana Patients*, *Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183.) When engaging in statutory construction " '[i]f the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.' [Citation.] But, '[i]f the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Flores*, *supra*, 44 Cal.App.5th at p. 992.)

Following these principles, several recently decided cases have addressed each of defendant's arguments. Indeed, in *Flores*, *supra*, 44 Cal.App.5th 985, Division 1 of this Court addressed a nearly identical appeal. In that case the defendant "was charged with murder, but pleaded guilty to the lesser included offense of voluntary manslaughter. Years later, she filed a petition to have her conviction vacated and to be resentenced under the resentencing provision of Senate Bill No. 1437. The trial court denied Flores's petition on grounds that the resentencing provision is available only to qualifying persons who were convicted of murder—not persons who were convicted of voluntary manslaughter." (*Id.* at p. 989.)

After discussing the history of section 1170.95, the court turned to the plain language of the statute as passed. The court noted that "[b]y its terms, section 1170.95 authorizes only a person who was 'convicted of felony *murder* or *murder* under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's *murder* conviction vacated . . . .' " (*Flores*, *supra*, 44 Cal.App.5th at pp. 992-993.) As the court reasoned, "[t]hrough its repeated and exclusive references to murder, the plain language of section 1170.95 limits relief only to qualifying persons who were convicted of murder. Section 1170.95 does not mention, and thus does not provide relief to, persons convicted of manslaughter . . . ." (*Flores*, at p. 993.)

Nevertheless, defendant here argues that though the statute's initial language only mentions those convicted of murder, subdivision (a)(2) states that in order to qualify for relief a petitioner must have been "convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder." (§ 1170.95, subd. (a)(2).) Defendant argues that this language "creates a contextual ambiguity that indicates the statute should be read as applying to plea agreements for other crimes entered into *in lieu* of a murder conviction."

However, the court in *Flores* specifically rejected a similar argument, stating that this "interpretation of section 1170.95 . . . places outsized importance on a single clause to the exclusion of the provision's other language," which "violates well-settled rules of

construction, which caution that we must not 'consider the statutory words in isolation; we must read the language as it is placed in the code section, and in the context of the entire statutory scheme.' [Citation.]" (*Flores*, *supra*, 44 Cal.App.5th at p. 995.) Moreover, the court noted that this clause does not necessarily create any ambiguity, as "criminal defendants can, and do, plead guilty to the crime of murder," for a variety of reasons, including simply to avoid the public embarrassment, financial cost, and emotional turmoil of a trial. (*Ibid.*) There is therefore no ambiguity or contradiction in restricting the application of the statute to petitioners who were convicted of murder after trial or pleaded guilty to murder to avoid trial and excluding those who pleaded to lesser offenses to avoid trial.

Defendant argues that this interpretation raises issues of equal protection. At least one court has already considered and rejected this argument. (See *People v. Cervantes* (2020) 44 Cal.App.5th 884, 888 (*Cervantes*).) As that court reasoned, "[t]he first step in an equal protection analysis is to determine whether the defendant is similarly situated with those who are entitled to the statutory benefit. [Citation.] [Defendant] was convicted of voluntary manslaughter, a different crime from murder, which carries a different punishment. Normally 'offenders who commit different crimes are not similarly situated' for equal protection purposes." (*Ibid*.) Section 1170.95 therefore presents no equal protection issue by treating those convicted of murder under the felony-murder rule different from those who pleaded to voluntary manslaughter in order to avoid a trial for murder.

Nor does interpreting section 1170.95 to exclude those convicted of voluntary manslaughter undermine the legislature's goals. "When the Legislature reforms one area of the law, it is not required to reform other areas of the law." (*Cervantes*, *supra*, 44 Cal.App.5th at p. 888.) "Here the legislative focus was centered on the unfairness of the felony murder rule. The Legislature could rationally decide to change the law in this area and not be currently concerned with crimes not involved with that rule. [Citation.] It also could reasonably decide that the punishment for voluntary manslaughter was appropriate, but the punishment for murder based on the felony murder rule could be excessive and reform was needed only there." (*Ibid.*) "[T]he Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses," (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887) and "[c]ourts routinely decline to intrude upon the 'broad discretion' such policy judgments entail." (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)

There is little doubt that this interpretation has the potential to present some incongruous outcomes. Indeed, "we acknowledge that in hindsight, [defendant] would have fared better by pleading guilty to murder. Because [her] liability would have been premised on [the] killing being a natural, probable, and foreseeable consequence of [her] participation . . . [s]he could have petitioned for relief under section 1170.95. Instead [s]he pleaded guilty to voluntary manslaughter, in the process admitting every element of that offense." (*People v. Turner* (2020) 45 Cal.App.5th 428, 439 (*Turner*).) We also acknowledge, as the court in *Turner* did, that " 'neither felony-murder nor the natural and

11

probable consequences doctrine are theories on which one can commit voluntary manslaughter.' " (*Ibid.*; see (*People v. Price* (2017) 8 Cal.App.5th 409, 430.)  Thus, "[b]y admitting voluntary manslaughter, [defendant] seems worse off for pleading guilty to a crime [s]he likely could not have committed."  (*Turner*, at p. 440.)

We also agree with the court in *Turner* that "[i]f there is a problem, it may lie in the adequacy of the factual basis for [defendant]'s plea. . . .  Whatever method employed, a bare statement that a factual basis exists, without inquiry, is inadequate."  (*Turner*, *supra*, 45 Cal.App.5th at p 440.)  Because the factual basis for defendant's plea is not in the record, and that issue is not before us, we do not address it further.  However, we echo our colleagues' sentiment that trial courts must diligently inquire into the factual basis of a plea to protect against " 'an especially high risk the defendant will plead to a crime he or she did not commit and for which no factual basis can be established,' " given " ' "the disparity in punishment between conviction by plea and conviction at trial." ' "  (*Ibid.*)

For that reason, we also echo our colleagues in Division 1 in expressing our sympathy with defendant's "perception that [s]he is in custody 'for a crime [s]he did not commit' . . . ."  (*Turner*, *supra*, 45 Cal.App.5th at p. 440.)  However, it must be remembered that defendant received the full benefit of her plea agreement.  At the time of her plea, she faced a murder conviction with all of its attendant consequences.  Hindsight based upon an unforeseen change in the law does not change that fact.

We conclude section 1170.95 does not provide defendant an avenue for relief.

## IV. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS                  
J.

We concur:

RAMIREZ            
P. J.

RAPHAEL            
J.