[No. B169540. Second Dist., Div. Two. July 21, 2004.]

KEITH KRAMER et al., Plaintiffs and Appellants, v.
INTUIT INC., Defendant and Respondent.

## COUNSEL

Morris, Polich & Purdy, David J. Vendler, Mark E. Hellenkamp, Richard H. Nakamura, Jr.; Goldberg and Goldberg and Barry P. Goldberg for Plaintiffs and Appellants.

Quinn Emanuel Urquhart Oliver & Hedges, Claude M. Stern and Patrick C. Doolittle for Defendant and Respondent.

## OPINION

**BOREN, P. J.**—Plaintiff Keith Kramer filed a class action lawsuit. He alleged that the software product rebate program by defendant Intuit Inc. required the purchase of a second product and violated the statutory proscription against offering a rebate "contingent on an event to occur subsequent to the consummation of the transaction." (Civ. Code, § 1770, subd. (a)(17).)[1] We find no violation of the statute, as the second product need not be purchased after the first product is purchased, but rather can be purchased prior to or at the same time as the other product. The trial court thus properly sustained Intuit's demurrer to the complaint.

### FACTUAL AND PROCEDURAL SUMMARY

Intuit sells both Quicken software and TurboTax software. Intuit placed a green sticker on the outside of Quicken 2002 retail boxes. The sticker with prominent lettering read as follows: "For a limited time get up to $30 off this Quicken® 2002 product when you buy certain TurboTax® products with 30 day mail-in rebate inside TurboTax 2001 box." In somewhat smaller-sized lettering the sticker also read, in pertinent part, as follows: "Rebate must be postmarked within 30 days of TurboTax purchase. See details inside TurboTax box."

---

[1] Unless otherwise indicated, all statutory references are to the Civil Code.

Kramer filed a class action complaint for restitution and injunctive relief, alleging two causes of action in a violation of the Consumers Legal Remedies Act. (§ 1750 et seq.) In the first cause of action, Kramer alleged that Intuit's rebate procedure constituted an unfair method of competition or an unfair practice, in violation of the proscription against "Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction." (§ 1770, subd. (a)(17).)

Kramer's second cause of action claimed the rebate offer was deceptive and misleading because the conditions of the rebate were printed in smaller type than that used to identify the amount of the rebate. He thus claimed he was misled by the rebate offer, which constituted an "unfair, fraudulent, and illegal" business practice. (See Bus. & Prof. Code, § 17200 et seq.)

As further alleged in the complaint: "The class that [Kramer] represents is composed of all purchasers of the aforementioned Quicken® products in California between November 26, 2001 through April 15, 2002, and four years prior to that time, who either did not receive a $30.00 rebate, discount, or other economic benefit after purchase of a single Quicken® product, and all those consumers who earned the $30.00 benefit after being enticed into buying a second Quicken® product, and all those consumers who purchased more than one Quicken® product and failed to obtain a $30.00 rebate, discount, or other economic benefit."

Intuit demurred to both causes of action. It argued that Kramer's reading of the rebate offer amounted to a perverse application of the consumer protection statutes and that his interpretation of the statute was contrary to legislative intent, conflicted with another rebate statute, would render countless other rebate programs illegal, and would prohibit truthful free speech and thus violate the First Amendment. Intuit also urged that the terms and conditions of the rebate were, in fact, not illegible or hidden. At the hearing on the demurrer, Intuit further argued that Kramer's complaint ignored the plain words of the rebate language on the packaging, because the language did not actually require a subsequent purchase.

The trial court sustained the demurrer without leave to amend as to the first cause of action. The court reasoned that the legislative intent was to prevent only deceptive or unfair rebate offers, that rebates are permissible by statute and inherently involve the subsequent event of mailing in a coupon, and that the Legislature could not have meant to include solely the mailing in of a coupon as the barred event "to occur subsequent to the consummation of the transaction." (§ 1770, subd. (a)(17).) The trial court thus did not reach the issue of whether, even accepting Kramer's construction of the statute, Intuit's

rebate would not violate the statute because the rebate language permitted but did not necessarily require a subsequent purchase, as opposed to a prior or contemporaneous purchase.[2]

Regarding Kramer's second cause of action, the trial court overruled Intuit's demurrer. Nonetheless, Kramer thereafter moved to dismiss with prejudice his claimed violation of Business and Professions Code section 17200 and agreed that the court could enter judgment against him on the first cause of action. Kramer explained that he did "not believe that the [second] cause of action remains tenable" after the court sustained the demurrer to the first cause of action. The trial court then dismissed with prejudice the second cause of action and entered judgment in favor of Intuit.

## DISCUSSION

### The standard of review

■ A trial court should not sustain a general demurrer "unless the complaint liberally construed fails to state a cause of action on any theory. [Citation.] Doubt in the complaint may be resolved against plaintiff and facts not alleged are presumed not to exist." (*C. & H. Foods Co. v. Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062 [211 Cal.Rptr. 765].) "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].) "Further, the rule that on appeal a litigant may not argue theories for the first time does not apply to pure questions of law." (*Ibid.*) ■ An issue of statutory interpretation, as in the present case, is purely a question of law which we resolve de novo. (*Botello v. Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1134 [280 Cal.Rptr. 535].)

### The meaning of the statute

"In construing statutes, we must determine and effectuate legislative intent." (*Woods v. Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].) ■ It is often stated that the judicial authority to investigate the intent of the Legislature is subject to the precondition that the statutory language in question be ambiguous, uncertain or unclear. Otherwise, the "plain meaning rule" prevails, and the literal text of the statute must be

---

[2] We note that the broadly defined class of consumers described in Kramer's class action complaint would include not only consumers who purchased Quicken® first and then TurboTax, but also those who purchased TurboTax first and then Quicken®, as well as those who purchased TurboTax and Quicken® at the same time.

respected without judicial construction or interpretation. (See, e.g., *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744–746 [38 Cal.Rptr.2d 650, 889 P.2d 970]; *Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 ·Cal.Rptr.2d 563, 885 P.2d 976].) Nonetheless, it is also well recognized that "[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole." (*Silver v. Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

"The courts resist blind obedience to the putative 'plain meaning' of a statutory phrase where literal interpretation would defeat the Legislature's central objective." (*Leslie Salt Co. v. San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614 [200 Cal.Rptr. 575].) "[W]ords are inexact tools at best, and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how 'clear the words may appear on "superficial examination."' " (*Harrison v. Northern Trust Co.* (1943) 317 U.S. 476, 479 [87 L.Ed. 407, 63 S.Ct. 361, 1943 C.B. 1120].) Thus, even where the statutory language "is not ambiguous, the intent of the Legislature is the end and aim of all statutory construction." (*Title Ins. & Trust Co. v. County of Riverside* (1989) 48 Cal.3d 84, 95 [255 Cal.Rptr. 670, 767 P.2d 1148]; see Code Civ. Proc., § 1859.)

In the present case, apart from any purported ambiguity in the statutory language asserted by Intuit,[3] several items are helpful in ascertaining legislative intent. We find instructive a legislative declaration of intent (see *Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 256 [104 Cal.Rptr. 761, 502 P.2d 1049]), the statement in a legislative committee report (see *People v. Ledesma* (1997) 16 Cal.4th 90, 98, 100 [65 Cal.Rptr.2d 610, 939 P.2d 1310]), and the subsequent enactment of a related statute that is part of the entire statutory scheme (see *Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081]).

■ The underlying purpose of the Consumers Legal Remedies Act (§ 1750 et seq.), as proclaimed in the statutory scheme itself, is "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (§ 1760.) The portion of that statutory scheme in question here is listed under a chapter entitled "deceptive practices," and proscribes as "unlawful" various "unfair methods of competition and unfair or deceptive acts or practices," including "[r]epresenting that the consumer will receive a rebate, discount, or other

---

[3] Intuit asserts that when viewed in the context of the entire statutory scheme, section 1770, subdivision (a)(17) bars only the proverbial "bait and switch" tactic and not a truthfully stated and fully disclosed rebate program.

economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction." (§ 1770, subd. (a)(17).)

The only statement in the legislative history that specifically addresses section 1770, subdivision (a)(17) again focuses on deception. It establishes that the Legislature intended to prohibit merchants from advertising a rebate or discount when they conceal from consumers the conditions to be satisfied to receive the rebate or discount. Specifically, the relevant Assembly Committee Report explains by way of example that this subdivision would prevent a situation where the consumer would "be required to buy an additional product before he could receive the advertised discount, or that he buy a more expensive and high quality product than the one advertised." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 292 (Sept. 30, 1970) 4 Assem. J. (1970 Reg. Sess.) p. 8466.) Here, the "advertised discount" is $30 off Quicken when TurboTax is purchased, and no other additional or more expensive product is required but concealed from the consumer.

■ The legislative intent of preventing concealment or deception by nondisclosure is further bolstered by the subsequent enactment of another statute addressing rebates. Almost two decades after the Legislature enacted section 1770, subdivision (a)(17), it enacted Business and Professions Code section 17701.5,[4] which on its face recognizes the validity of mail-in rebates. The statute requires the accurate advertisement of rebates, and it presumes that requiring a consumer to engage in a subsequent transaction—"send[ing] a coupon to the manufacturer for a cash rebate" (*ibid.*)—after the consummation of the transaction is not a prohibited business practice. There is again no indication that the Legislature intended to outlaw rebates that are neither deceptive nor misleading.

Significantly, Kramer does not contend on appeal that the rebate in question was in any manner deceptive or misleading. Indeed, Kramer had the trial court dismiss his second cause of action, which had alleged a deceptive and misleading rebate constituting a purportedly illegal and unfair business practice. Intuit's rebate program thus does not run afoul of the Legislature's intent in enacting the statute.

---

[4] Business and Professions Code section 17701.5 provides as follows: "It is unlawful for any person to advertise a price that requires the buyer to send in a coupon to the manufacturer for a cash rebate, unless the price actually paid to the person selling the item is clearly and conspicuously advertised along with the final price with the coupon."

*The application of the statute here*

Nor does Intuit's rebate program run afoul of the literal language of the statute. As we interpret the language of section 1770, subdivision (a)(17), it does not prohibit Intuit's rebate offer simply because it does not apply to the terms and conditions set by Intuit for its rebate. Kramer contends that because he was "required to buy an additional product before he could receive the advertised discount," the rebate thus was, in the terms of the statute, "contingent on an event to occur subsequent to the consummation of the transaction." (*Ibid.*) But Intuit's rebate program does not necessarily *require* a subsequent purchase, and thus the earning of the benefit is not "contingent on" a subsequent purchase.

Intuit's rebate program does not require a subsequent purchase because the consumer has three purchase options to qualify for the rebate. Only one of those options involves the purchase of the qualifying product, TurboTax software, after the purchase of the Quicken software. Under the terms of the rebate program, the other two scenarios to satisfy the rebate entail either (1) purchasing TurboTax and Quicken at the same time, or (2) purchasing TurboTax first and then Quicken. Neither of these two options involves the "subsequent" purchase of TurboTax.

Kramer does not contest that these two other options exist for obtaining the rebate. Indeed, the broad language of the rebate sticker on the Quicken product box informs the consumer that the rebate is available if "you buy certain TurboTax products" and if the rebate is "postmarked within 30 days of TurboTax purchase." The language of the rebate does not require that the consumer purchase TurboTax within 30 days *after* the Quicken purchase. Thus, Intuit's offer allows for a rebate if the additional software product, TurboTax, was purchased within 30 days of, at the same time as, or subsequent to the purchase of Quicken. Intuit's rebate sticker simply does not instruct that the consumer *must* purchase TurboTax subsequent to the purchase of Quicken.

■ Accordingly, since the language of the rebate sticker cannot be read to require a subsequent purchase to obtain a rebate, Intuit's rebate program does not violate section 1770, subdivision (a)(17). The trial court, although relying on different reasoning, thus properly sustained Intuit's demurrer and dismissed the complaint.

## DISPOSITION

The judgment is affirmed.

Nott, J., and Ashmann-Gerst, J., concurred.

A petition for a rehearing was denied August 11, 2004, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 17, 2004. Brown, J., did not participate therein.