Filed 7/13/22  Koerber v. Encyclopaedia Britannica CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KIMBERLY KOERBER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ENCYCLOPAEDIA BRITANNICA, INC., et al.,<br><br>    Defendants and Respondents. | B312047<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV12846) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.

Gary Rand & Suzanne E. Rand-Lewis, Suzanne E. Rand-Lewis and Timothy Rand-Lewis for Plaintiff and Appellant.

Jackson Lewis, Andrea F. Oxman, Eve Tilley-Coulson and Dylan B. Carp for Defendants and Respondents.

* * * * * *

Kimberly Koerber (appellant) appeals from a judgment of dismissal entered after the trial court sustained demurrers to all nine causes of action appellant alleged against respondents Encyclopaedia Britannica, Inc. (Britannica), and Michael Ross (Ross) (collectively respondents) without leave to amend. Appellant also challenges the trial court's order denying, in part, appellant's motion to strike and/or tax costs.

Finding no error, we affirm the judgment and the order.

## BACKGROUND

**Appellant's complaint**

On April 12, 2019, appellant filed a complaint against respondents alleging causes of action for (1) intentional infliction of emotional distress (IIED), (2) violation of Business and Professions Code section 17200, (3) negligence, (4) fraud, (5) wrongful refusal to hire, (6) violation of the California Constitution, (7) violation of civil rights, (8) violation of Labor Code section 1101, and (9) violation of Labor Code section 1102.[1]

Appellant alleged that in 2016, she was employed by a third party sales consultant. During a private conversation while off work, appellant "expressed private personal political, feminist and religious opinions." Her private conversation was "illegally recorded by a hidden camera without her knowledge" by "undercover operatives" of an entity called Project Veritas. After being recorded, appellant's private political comments were edited and produced in a promotion piece to market Project Veritas' conservative agenda, which Project Veritas then

---

[1] Appellant named Ross as a defendant on all causes of action except the fifth.

2

disseminated through social media.  The video was edited to "clearly show that [appellant] was engaging in a private conversation about private personal political, feminist and religious beliefs" and "that she was unaware that she was being recorded."  Project Veritas' actions "resulted in [appellant's] wrongful termination" by her third party employer.

After her termination, appellant learned of an open sales position with Britannica through a headhunter.  Appellant applied for the position titled "Western Regional Sales Executive."  Prior to applying, appellant confirmed that respondents were aware of the facts related to the 2016 Project Veritas recording, dissemination of the video, as well as the fact that she was wrongfully terminated because she expressed private opinions relating to her personal political, feminist and religious beliefs in a private conversation while off work.  Appellant learned that respondents, and specifically respondent Ross, were aware of the Project Veritas recording.  Ross represented to appellant that he considered appellant a candidate for the open position at Britannica and wanted to interview her.  Ross was, at all relevant times, Britannica's "Senior Vice President, Digital Learning, Britannica Digital Learning US."[2]

In reliance on Ross's representation, appellant applied and was interviewed via Skype for the sales executive position.  Unbeknownst to appellant, Ross had chosen to interview her to take the opportunity to abuse and berate her given her personal political, feminist and religious beliefs.  Appellant believed Ross had taken a special interest in the Project Veritas production of

---

[2]  Appellant alleges that Britannica Digital Learning US is a division of Encyclopaedia Britannica, Inc.

her, viewing it in close proximity to the interview, as he was conversant about it.  During the interview Ross "screamed at and berated [appellant], telling her that her prior wrongful termination was justified, that no one should hire her because of her political views, and that he would not hire her because of her political, feminist and religious beliefs and views, confirming that he knew she had expressed them in a private conversation, when she was not working."

For a substantial portion of the job interview, Ross chose to focus on the Project Veritas video, a subject which appellant did not raise.  Ross appeared fixated on the topic while berating appellant for her political views.  Appellant was shocked and distressed as this was not the conduct of a professional interviewer.  In response, appellant stated "she had 'first amendment rights', stood up for her expression of her political, feminist and religious beliefs, and pointed out that it was a private conversation."  (Boldface omitted.)  Appellant claims to be a Democrat who believed she was being interviewed during nonworking hours by individuals working for then-California Attorney General Kamala Harris, and she had not made certain statements attributed to her including those about "Common Core" content.  Appellant informed Ross that her work did not involve "Common Core," and that Ross's statements and impressions about the videos were incorrect.

Ross, incensed, screamed at appellant and abusively berated her, using a loud, volatile voice, including that "sales representatives should keep quiet about politics."  Appellant was shocked, extremely distressed and tearful.

Appellant alleged that Ross's motivation for the interview was to interrogate, abuse and berate appellant about the Project

Veritas video and to berate her for her personal political, feminist and religious beliefs, not to hire her. Appellant further alleged that Ross denied her employment based upon lawful conduct, which occurred during nonworking hours, in which she expressed her personal political, feminist and religious beliefs.

Britannica "refused to hire [appellant] because of her lawful conduct which occurred during nonworking hours which did not involve [Britannica] in any manner."

Appellant did not allege that she had exhausted her administrative remedies required when bringing an action for violating the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.). Appellant filed an administrative claim with the California Labor Commissioner's Office, which she later withdrew.

**Respondents' demurrers**

On August 12, 2019, respondents filed demurrers to appellant's complaint. Britannica demurred to all causes of action alleged against it, arguing that appellant failed to allege her fraud claim with sufficient specificity; appellant's claim for violation of the California Constitution is not a legally cognizable claim; Britannica did not interfere with appellant's political activity; appellant was never subject to coercion regarding her political activity; appellant's cause of action for violation of civil rights failed to state sufficient facts and was improper given appellant's allegations of employment discrimination; appellant's claim for wrongful refusal to hire is not a legally cognizable claim; appellant did not state facts sufficient to state a claim for intentional infliction of emotional distress; appellant did not allege that Britannica owed her any duty to support her negligence claims; and appellant failed to state a claim under

Business and Professions Code section 17200.  Britannica requested that the trial court take judicial notice of appellant's initial claim with the Department of Industrial Relations, and the department's closure of the initial claim.

Ross demurred to the causes of action alleged against him on the same grounds as Britannica.

The trial court sustained without leave to amend respondents' demurrers to the first, second, third, fourth, and sixth causes of action.  It sustained with leave to amend respondents' demurrers to the fifth, eighth, and ninth causes of action.

**First amended complaint (FAC)**

Appellant filed her FAC on November 22, 2019, alleging causes of action for (1) wrongful refusal to hire, (2) violation of Labor Code section 1101, and (3) violation of Labor Code section 1102.  Appellant's complaint contained nearly identical factual allegations as the original complaint.

**Respondents' demurrers to the FAC**

On December 27, 2019, respondents filed demurrers to the FAC.  Britannica demurred to all causes of action alleged against it and argued that appellant's claim for wrongful refusal to hire is not a legally cognizable claim and her exclusive remedy was through a complaint to the Labor Commissioner.  Britannica further argued that appellant's cause of action for violation of Labor Code section 1101 failed because appellant failed to allege that Britannica controlled or directed her political activities, and her cause of action for violation of Labor Code section 1102 failed because appellant failed to allege that Britannica coerced or influenced her.  Ross demurred to appellant's complaint on the same grounds set forth by Britannica.

6

On June 30, 2020, the trial court heard argument and took consideration of the matter under submission. On August 4, 2020, it issued an order sustaining the demurrers as to all causes of action without leave to amend. The court ordered respondents to move for dismissal pursuant to Code of Civil Procedure section 581.

On September 3, 2020, respondents filed their request for dismissal.

**Proceedings related to respondents' memorandum of costs**

On September 23, 2020, respondents filed their memorandum of costs, seeking a total of $2,599.64. Respondents supported their memorandum of costs with a declaration, including numerous invoices, from counsel Andrea F. Oxman.

Appellant filed a motion to strike and/or tax respondents' memorandum of costs on October 13, 2020, disputing certain of respondents' claimed costs. Following briefing, on January 13, 2021, the trial court issued its minute order granting appellant's motion to strike and/or tax costs in part. The court allowed total costs in the amount of $2,379.04.

**Judgment and appeal**

Judgment was entered in favor of respondents on February 16, 2021. On March 18, 2021, appellant filed her appeal.

## DISCUSSION

### I. Demurrers

#### A. *Applicable law and standard of review*

The function of a demurrer is to test the legal sufficiency of a complaint. (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113.) A demurrer may be directed

7

only to "defects appearing on the face of the complaint or from matters of which the court must or may take judicial notice." (*Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 601.)

In reviewing an order sustaining a demurrer, "we independently review the complaint to determine whether the facts alleged state a cause of action under any possible legal theory." (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 998 (*Berger*).) We give the complaint a reasonable interpretation, treating the demurrer as admitting all facts properly pleaded, "but do not 'assume the truth of contentions, deductions or conclusions of law.'" (*Ibid.*)

A judgment of dismissal following a demurrer, sustained without leave to amend, should be affirmed "if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Kramer v. Intuit Inc.* (2004) 121 Cal.App.4th 574, 578.)

### B. *The demurrers were properly sustained*

We review each of appellant's causes of action under the standard set forth above and separately below and conclude that the trial court did not err in determining that appellant failed to state a cause of action against respondents.

#### 1. *IIED (first cause of action)*

The elements of the tort of IIED are ""(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . ." Conduct to be outrageous must be so extreme as to exceed all

8

bounds of that usually tolerated in a civilized community.'" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.)

Generally personnel management activities do not qualify as conduct "beyond the bounds of human decency," for the purposes of an IIED claim. (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80 (*Janken*).) "A simple pleading of personnel management activity is insufficient to support a claim of [IIED], even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." (*Ibid.*)

Appellant's complaint alleged that she made respondents aware of the facts related to the 2016 recording prior to applying for the position with respondents. She alleged that Ross represented to her that he considered her a candidate for the position and wanted to interview her. However, unbeknownst to appellant, Ross had chosen to interview her solely to take the opportunity to verbally abuse and berate her due to her personal political, feminist and religious beliefs. Appellant alleged that Ross screamed at her and berated her, told her that her prior wrongful termination was justified, that no one should hire her, and that he would not hire her because of her political, feminist and religious beliefs.

Appellant's IIED cause of action fails because appellant failed to allege sufficiently outrageous and extreme conduct to support such a cause of action. First, as *Janken* dictates, wrongfully motivated personnel decisions generally cannot be considered conduct sufficient to support a claim of IIED. (*Janken, supra*, 46 Cal.App.4th at p. 80.) Appellant's allegations involve respondents' alleged wrongful motivations in seeking to interview her, respondent Ross's act of allegedly screaming and

9

berating her during the job interview, and respondents' alleged refusal to hire her based on her alleged lawful conduct during nonworking hours.  In sum, appellant's allegations involve allegedly wrongfully motivated personnel decisions, which cannot form the basis of a claim of IIED.  Instead, appellant's remedy is "a suit against the employer for discrimination."  (*Ibid.*)

Further, even considered outside of the context of a personnel decision, respondents' alleged actions do not rise to the level of extreme and outrageous conduct supporting a cause of action for IIED.  The Supreme Court has stated that "[l]iability for [IIED] "'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051 (*Hughes*).)  While respondents' alleged actions could be considered insults or indignities, such behavior is insufficiently outrageous to constitute grounds for IIED.  Appellant cites no authority for her position that screaming at, or berating, an individual in the employment context supports a claim of IIED.

Appellant also did not allege extreme emotional distress caused by respondents' conduct beyond being "shocked, extremely distressed, and tearful."  "With respect to the requirement that a plaintiff show severe emotional distress, [the Supreme Court] has set a high bar.  'Severe emotional distress means "'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"'" (*Hughes, supra,* 46 Cal.4th at p. 1051.)  Appellant's alleged shock, distress, and tears do not rise to the level of distress of such a substantial or enduring quality that no reasonable person should be expected to endure it.  (*Ibid.* [holding

10

that "discomfort, worry, anxiety, upset stomach, concern, and agitation" were insufficient to support a claim of IIED].)

*McCough v. University of San Francisco* (1989) 214 Cal.App.3d 1577, cited by appellant, supports this outcome. In *McCough*, a university professor sued the university after it denied him tenure. The professor's allegations that the university told him he had met the standards for tenure then denied him tenure, refused to take the professor's grievances to arbitration, and told alleged lies about the professor were insufficient to support a claim for IIED. (*Id.* at pp. 1587-1588.) Similarly, appellant's allegations here were insufficient to support such a claim. Respondents' demurrers were properly sustained as to this cause of action.

**2.** *Business & Professions Code section 17200 (second cause of action)*

Business and Professions Code section 17200, also known as the unfair competition law (UCL), prohibits "any unlawful, unfair or fraudulent business act or practice." "An 'unlawful' business practice or act within the meaning of the UCL 'is an act or practice, committed pursuant to business activity, that is at the same time *forbidden by law*.'" (*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 351.) In order to show a violation of the UCL, a plaintiff must identify statutory, regulatory, or decisional law that the defendant has violated. (*Bernardo*, at p. 352.) "'[A]n action based on [the UCL] to redress an unlawful business practice "borrows" violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [Business and Professions Code] section 17200 et seq. and subject to the distinct remedies

11

provided thereunder.'" (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383.)

Appellant asserts that her complaint alleged that respondents engaged in conduct that violated the California Constitution, Labor Code, Civil Code, and FEHA, which were more than sufficient to state a cause of action under the UCL. Appellant correctly asserts that we must treat respondents' demurrers as "admitting the truthfulness of properly pleaded factual allegations of the complaint." (Citing *Porten v. University of San Francisco* (1976) 64 Cal.App.3d 825, 827.)

Even accepting the truth of all appellant's properly pled factual allegations, we find, as set forth in further detail in this opinion, that appellant has failed to allege a violation of any underlying law. Because appellant's complaint and FAC failed to establish any cause of action, her cause of action for violation of the UCL must also fail. Thus, respondents' demurrers to this cause of action were properly sustained.

**3.** *Negligence (third cause of action)*

"'The elements of a cause of action for negligence are well established. They are "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury."'" (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.)

Appellant alleged that respondents had a duty to act towards her with reasonable care. However, an "allegation [that] states only a legal conclusion, rather than pleading facts . . . is inadequate." (*Berger, supra*, 128 Cal.App.4th at p. 1006.) The existence of a duty is a legal question, "a court's conclusion that a particular plaintiff is entitled to protection." (*Mendoza v. City of Los Angeles* (1998) 66 Cal.App.4th 1333, 1339.) The existence of

a duty is based on a balancing of factors, "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the conduct and the injury, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with liability for breach, and the availability and prevalence of insurance." (*Ibid.*) Appellant cites no legal authority for the proposition that a potential employer undertakes a duty to act with due care in protecting the subject of a job interview from distress and shock. Nor does she allege any facts that show that respondents undertook such a duty in this case. In sum, appellant has failed to allege facts that show the existence of a legal duty on the part of respondents towards her during the job interview. In the absence of such a duty, appellant's cause of action for negligence must fail. The demurrers were properly sustained as to this cause of action.

### 4. *Fraud (fourth cause of action)*

The elements of fraud are "(1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages." (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469.) Fraud allegations must be pleaded with specificity—general and conclusory allegations are insufficient. (*Ibid.*) Actionable misrepresentations must pertain to past or existing material facts. (*Ibid.*) "Statements or predictions regarding future events are deemed to be mere opinions which are not actionable." (*Ibid.*)

13

Appellant alleged that Ross represented his intention to interview appellant because she was a candidate for the open position and that defendants further represented they were an equal opportunity employer. However, according to appellant's allegations, those representations were false at the time they were made because Ross's intent in selecting appellant as a candidate for an interview was not to hire her, but to interrogate, abuse and berate her about the video and her personal political, feminist and religious beliefs. As the trial court pointed out, appellant also alleged that she applied for the position and was interviewed by respondents on April 13, 2017, via Skype. Therefore, there was nothing false about Ross's representation that he wanted to interview her. Appellant did not allege that respondents promised to hire her, nor did she allege that respondents promised that she would advance to the next stage of the interview process.

In the absence of a material misrepresentation, appellant's fraud claim fails. The trial court properly sustained respondents' demurrers to this cause of action.

**5.** *Wrongful refusal to hire (fifth cause of action)*

In both the original complaint and FAC, appellant asserted a cause of action for "wrongful refusal to hire in violation of public policy." As the trial court noted, California does not recognize a tort of wrongful refusal to hire. (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176-178 (*Tameny*); *Williams v. Sacramento River Cats Baseball Club, LLC* (2019) 40 Cal.App.5th 280, 283, 286-288 (*Williams*).) In *Tameny*, the Supreme Court recognized a tort cause of action for wrongful termination in violation of public policy. (*Tameny, supra*, at pp. 176-178.) The *Williams* court clarified that there is no cause of action for

14

wrongful refusal to hire, because the tort applies only where the employer owes a duty to the plaintiff because of an existing employment relationship. (*Williams, supra*, at pp. 286-288.) The *Williams* court acknowledged that failing to hire a prospective candidate on the basis of race violates article I, section 8 of the California Constitution but held that a plaintiff's sole remedy is to sue under the FEHA, which provides a statutory cause of action. (*Williams*, at p. 288.) As the *Williams* court stated: "Because plaintiff was not an employee, defendant did not owe him a duty; thus, plaintiff's *Tameny* claim must fail." (*Ibid.*)

Appellant does not address these authorities in her brief to this court. Instead, appellant insists that she is not required to exhaust her administrative remedy with the Labor Commissioner before filing her civil complaint. Appellant cites Labor Code section 244, which states, in part, "(a) An individual is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of this code, unless that section under which the action is brought expressly requires exhaustion of an administrative remedy." This provision is inapplicable to appellant's tort claim for wrongful refusal to hire.

Appellant's citation to Labor Code section 96, subdivision (k) is inaccurate and irrelevant. Appellant asserts that the statute contains language supporting a refusal to hire claim. The statute contains no such language.[3]

---

[3] Labor Code section 96, subdivision (k), provides that "[t]he Labor Commissioner and his or her deputies and representatives authorized by him or her in writing shall, upon the filing of a claim therefor by an employee, . . . take assignments of:

The trial court properly sustained respondent Britannica's demurrer to appellant's fifth cause of action for wrongful refusal to hire.

**6.** *Constitutional claim (sixth cause of action)*

Appellant's constitutional claim is based on article I, section I of the California Constitution, which states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Her claim is also based on article I, section 8 of the California Constitution, which states: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

Appellant has failed to cite any law establishing that she is entitled to bring a claim for violation of the California Constitution. (*Williams, supra*, 40 Cal.App.5th at pp. 286-288.) As set forth above, the *Williams* court acknowledged that failing to hire a prospective candidate on the basis race violates article I, section 8 of the California constitution but held that a plaintiff's sole remedy is to sue under the FEHA, which provides a statutory cause of action. (*Williams, supra*, at pp. 286-288.)

Appellant cites two cases to support her position that she has stated a direct cause of action pursuant to the California Constitution, but neither case supports her position. In *Madison*

[¶] . . . [¶] (k) Claims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises." Contrary to appellant's representation, it contains no language concerning refusal to hire.

*v. Motion Picture Set Painters & Sign Writers Local 729* (C.D.Cal. 2000) 132 F.Supp.2d 1244, the District Court held that the parties' grievance "cannot serve as the basis for a cause of action alleging violation of Article I, § 8." (*Id.* at p. 1256.) Thus, the case does not stand for the proposition that appellant may state such a cause of action here. In *Strother v. Southern California Permanente Medical Group* (9th Cir. 1996) 79 F.3d 859, 871, the Ninth Circuit held that summary judgment was properly granted as to the plaintiff's constitutional claim without addressing whether such a cause of action is authorized. Thus, the case does not authorize such a cause of action. (*PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1200 [""'an opinion is not authority for a proposition not therein considered"'"].)

The trial court properly sustained respondents' demurrers to the sixth cause of action.

**7.** *Civil rights (seventh cause of action)*

In her seventh cause of action, appellant alleged violations of Civil Code section 51 (Unruh Civil Rights Act); Civil Code section 52.1, subdivision (b) (Tom Bane Civil Rights Act) (Bane Act); and Civil Code section 51.7, subdivision (b)(1) (Ralph Civil Rights Act of 1976) (Ralph Act). Her allegations do not support a viable cause of action under any of these statutes.

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." The Supreme Court

17

has held that the Unruh Civil Rights Act has "no application to employment discrimination." (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 77; see *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 500.) Because appellant's allegations relate exclusively to her interview for employment with respondents, she has not stated a cause of action for violation of the Unruh Civil Rights Act.

The Bane Act provides that any "person" may not "interfere[] by threat, intimidation, or coercion, or attempt[] to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." (Civ. Code, § 52.1, subd. (b).) Appellant's complaint alleges no threats, intimidation, or coercion interfering with her exercise of her rights. Appellant's allegations that she was screamed at and berated during a job interview are insufficient.

The Ralph Act similarly provides, in part, that "[a]ll persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics." (Civ. Code, § 51.7, subd. (b)(1).) A required element of a Ralph Act violation is an allegation that the defendant committed violence or made a threat of violence. Appellant has failed to allege any acts of violence or threats of violence, therefore her allegations are insufficient to set forth a violation of the Ralph Act.

18

The trial court properly sustained respondents' demurrers to the seventh cause of action.

**8.** *Labor Code section 1101 (eighth cause of action)*

Labor Code section 1101 provides, "[n]o employer shall make, adopt, or enforce any rule, regulation, or policy: [¶] (a) Forbidding or preventing employees from engaging or participating in politics or from being candidates for public office," or "(b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees." Labor Code sections 1101 and 1102 serve to protect "'the fundamental right of employees in general to engage in political activity without interference by employers.'" (*Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 487, superseded by statute as stated in *In re Marriage Cases* (2008) 43 Cal.4th 757, 835, fn. 56.)

Appellant alleges that respondents berated her and refused to hire her due to a private, personal opinion publicized in a video due to a concealed policy and rule not to hire those such as appellant who participate in political activity. Appellant does not allege that she was at any time an employee of respondents, or that respondents forbade her from engaging in political activities or controlled or directed her political activities. In fact, appellant alleged that during the interview, she stood up for her actions and insisted that she had a right to express her personal political, feminist and religious beliefs. Because appellant was not an employee of respondents, and because respondents did not coerce or attempt to control her, appellant has failed to state a cause of action for violation of Labor Code section 1101. The trial court properly sustained respondents' demurrer to this cause of action.

19

**9.** *Labor Code section 1102 (ninth cause of action)*

Labor Code section 1102 states: "No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity." As set forth above, the statute was designed to protect "'the fundamental right of employees in general to engage in political activity without interference by employers.'" (*Gay Law Students Assn. v. Pacific Tel. & Tel. Co., supra*, 24 Cal.3d at p. 487.)

As set forth above, according to the allegations of the complaint and FAC, appellant was never an employee of respondents. Therefore, this statute does not apply to her. Also appellant failed to allege that she was coerced, influenced or threatened with discharge or loss of employment. Appellant cites no authority suggesting that the statute has been extended to apply to prospective employees. In short, appellant has not alleged a violation of Labor Code section 1102, and the trial court properly sustained respondents' demurrer to this cause of action.

**C.** *Leave to amend*

After affording appellant one opportunity to amend three causes of action, the trial court ultimately sustained respondents' demurrers to all of appellant's causes of action without leave to amend. On appeal, the burden falls on appellant to show that there is a reasonable possibility that the appellant could cure the defects in the complaint by amendment. (*San Diego Unified School Dist. v. Yee* (2018) 30 Cal.App.5th 723, 742.) To meet this burden, an appellant "must affirmatively demonstrate how the complaint can be amended and how the amendment will cure the deficiencies." (*Ibid.*)

20

Appellant has not attempted to show how she can cure any of the defects in the complaint or FAC by amendment.  Thus, the trial court did not abuse its discretion in declining to grant appellant leave to amend.

## II.    Cost award

### A.    *Applicable law and standard of review*

Code of Civil Procedure section 1032, subdivision (b), provides that except as otherwise provided by statute, "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  Such costs generally "shall be as determined by the court in its discretion."  (Code Civ. Proc., § 1033, subd. (a).)  Allowable costs include filing and motion fees (Code Civ. Proc., § 1033.5, subd. (a)(1)), service of process fees (*id*, subd. (a)(4)), and court reporter fees (*id.*, subd. (a)(11)).  Fees that are not expressly authorized by statute may be allowed in the discretion of the court.  (*Id.*, subd. (c)(4) ["Items not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion."]; see *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 132.)  In evaluating discretionary costs, the test is whether such items were "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation."  (Code Civ. Proc., § 1033.5, subd. (c)(2); see *Applegate v. St. Francis Lutheran Church* (1994) 23 Cal.App.4th 361, 364.)

"If the items appearing in a cost bill appear to be proper charges, the burden is on the party seeking to tax costs to show that they were not reasonable or necessary.  On the other hand, if the items are properly objected to, they are put in issue and the burden of proof is on the party claiming them as costs.  Whether a cost item was reasonably necessary to the litigation presents a

21

question of fact for the trial court and its decision is reviewed for abuse of discretion." (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774.)

**B.** *Filing and motion fees*

Appellant moved to tax $449.38 from respondents' costs related to the electronic filing of documents with the court on the grounds that such charges were, in fact, unrecoverable attorney service charges. Appellant objected that the invoices submitted by respondents included charges for "base" fees that varied, with no explanation for the variance, and that respondents claimed fees for delivering and copying "chambers copies" of respondents' filings. Appellant argues that photocopying charges are expressly disallowed by Code of Civil Procedure section 1033.5, subdivision (b)(3).

Filing fees are expressly recoverable under Code of Civil Procedure section 1033.5, subdivision (a)(1). Respondents' cost declaration shows that respondents used Ace Attorney Service, Inc., an approved electronic service provider, to file their demurrers to both the initial complaint and the FAC, as required by local rules and the trial court's standing order, and to have courtesy copies of their filings delivered to the court, also required by the local rules and the trial court's standing order. Respondents attached to their supporting declaration both a copy of the trial judge's standing order and the Los Angeles Superior Court's standing orders. The orders showed the requirements regarding electronic filing and providing courtesy copies to the court. Respondents showed that the dates of the challenged charges corresponded with the dates that respondents filed their demurrers and reply briefs, as well as a joint memorandum filed

22

in conjunction with an informal discovery conference that the parties were required to attend.

The trial court did not abuse its discretion in determining that these costs were reasonably necessary to conduct the litigation.  The court did not err in denying appellant's motion to tax these costs.

**C.    *Service of process***

Appellant argues that the trial court improperly permitted respondents to recover $16.41 in relation to service of process for the cost of shipping their reply briefs to appellant's counsel via UPS overnight mail.  Appellant acknowledges that Code of Civil Procedure section 1033.5, subdivision (a)(4) allows for recovery of fees incurred for the service of process, but argues that shipping by overnight mail is not expressly permitted.  Instead, appellant argues, Code of Civil Procedure section 1033.5, subdivision (a)(4) limits allowable service of process costs to the specific types of service mentioned therein.  Appellant points out that Code of Civil Procedure section 1033.5, subdivision (b)(3) disallows postage charges.

We find that the trial court did not abuse its discretion in permitting $16.41 in costs incurred by respondents for service of process.  Overnight "courier or messenger fees are not specifically enumerated as allowable costs in Code of Civil Procedure section 1033.5, subdivision (a), neither are they prohibited in section 1033.5, subdivision (b)." (*Foothill-De Anza Community College Dist. v. Emerich* (2007) 158 Cal.App.4th 11, 30.)  Thus, such fees "may be recoverable in the trial court's discretion if 'reasonably necessary to the conduct of the litigation.'" (*Ibid.*)  Respondents point out that they did not use overnight delivery for mere convenience, but because Code of Civil Procedure section 1005,

23

subdivision (c) requires either a messenger service or overnight delivery of reply briefs "to ensure delivery to the other party or parties not later than the close of the next business day after the time the opposing papers or reply papers . . . are filed."

The trial court did not err in denying appellant's motion to tax $16.41 in overnight courier fees related to service of process.

### D.    *Court reporter costs*

Appellant argues that the trial court should have disallowed $425 in court reporter "attendance fees" for the October 9, 2019 and June 30, 2020 hearings.  Appellant argues that Government Code section 68086, subdivision (a)(1) sets a "fee of thirty dollars ($30) . . . for the reasonable cost of the court reporting services provided at the expense of the court by an official court reporter pursuant to Section 269 of the Code of Civil Procedure" for "each proceeding anticipated to last one hour or less."  Appellant claims that a charge 14 times higher than this amount is patently unreasonable.  Further, appellant argues, while having a court reporter at the hearings may have been convenient to respondents' counsel, appellant argues, they were unnecessary to the conduct of the litigation.

Costs incurred for court reporter services are authorized by Code of Civil Procedure section 1033.5, subdivision (a)(11).  (See *Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 58-59 [allowing recovery to prevailing party of $2,250 in court reporter fees]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 858 [allowing recovery to prevailing party of over $3,930 in court reporter fees].)  Appellant acknowledges that Government Code section 68086, cited in support of her argument, applies to court reporting services provided at the expense of the court. Appellant fails to cite a cap on reasonable fees for private court

24

reporting services. Nor does she cite any authority for her position that $425 is patently unreasonable. We presume the trial court has experience in approving court reporter fees in its courtroom.

Further, respondents point out that the court reporting was necessary to the litigation. In their demurrers to the FAC, respondents relied heavily on the court's position at the hearing on the initial demurrers. Respondents point out that without the transcripts, they could not have adequately reviewed the trial court's position following the first round of demurrers.

The trial court acted within its discretion in allowing respondents to recover the costs of the court reporter attendance fees. No error occurred.

## DISPOSITION

The judgment and order are affirmed. Respondents are awarded their costs of appeal.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.

25